## CARL H. BERNHARDT ET AL V. PORT ARTHUR INDEPENDENT SCHOOL DISTRICT.

No. A-7157. Decided April 22, 1959.
(324 S.W. 2d Series 163)

*Carruth & Gray* and *William T. Gray*, of Port Arthur, for petitioners.

*Fuller & Fuller* and *James S. Fuller*, for respondents.

MR. JUSTICE CULVER delivered the opinion of the Court.

The respondent, Port Arthur Independent School District, sued petitioners, Carl H. Bernhardt and wife, for taxes, penalties and interest due and owing for the years 1954 and 1955. Petitioners defended on the ground that the assesssment on their property was not equal and uniform with the assesssments made by respondents on other similar property within the district; that it was illegal, arbitrary and confiscatory, and the assessment was at a much higher rate and value than other similar property.

At the conclusion of petitioners' case (nonjury) respondent's motion for judgment was granted and judgment entered against petitioners for the amount of the debt, together with foreclosure. In the affirmance by the Court of Civil Appeals (319 S.W. 2d 151) we concur.

The petitioners contend that they established a prima facie case of discrimination on the part of the Equalization Board, and, therefore, the trial court was in error in granting the motion for judgment and entering judgment against them. The testimony consisted in that given by Bernhardt himself, by a real estate dealer on market values, by a member of the School Board, by a member of the Equalization Board, and under the adverse party rule, by the district's collector-assessor, who was also business manager and secretary of the Board. Conceding that in this case the motion for judgment is to be considered as having the same effect as a motion for an instructed verdict, (the respondent does not maintain to the contrary) yet even so we are of the opinion that the motion was in order and was properly granted.

Petitioners' property, a brick veneer residence, is located in the City of Groves, adjoining the City of Port Arthur, fronting 216-2/3 feet on Twin Cities Boulevard, to a depth of 630 feet, comprising 3.1333 acres.

Prior to 1954 there had been no revaluation of the land values in the district for a number of years. In that year the Board, with the assistance of three reputable and experienced real estate dealers, began a revaluation system and at the same time increased the taxable value rate from 40 to 60 per cent of the market value.

The Board of Equalization raised petitioners' taxable land values from $1250.00 to $6410.00, arriving at this figure by valuing the front to a depth of 150 feet at 14 cents per square foot and the remainder at 1.4 cents per square foot, the rear portion being of much less value, inaccessible as it was for development. Petitioner himself admitted that the valuation on the rear part of his property was somewhat low. As a result solely of the increase in the taxable value rate from 40 to 60 per cent of the market value, the assessed value of petitioners' improvements was raised from $7,000.00 to $9,800.00.

When petitioners protested and pointed out the fact that their property, so far as land values were concerned, without

water and sewerage connections, was assessed equally with the property across the street that had those facilities, the Board granted a reduction from 14 cents to 11.2 cents per square foot, reducing the land value to $5020.00, and the improvements to $9,240.00. Overall, the assessed value of the land averaged 4.6 cents per square foot or $1600 per acre.

The petitioners alleged the assessed valuations on both the land and improvements to be discriminatory and presented for comparison eight properties which they say are valued for tax purposes at a much lower figure in proportion to their market value. They were referred to in the trial as the Oom property, the Foster property, the Fairhaven lands, the Stadium lands, the Mulkey, Fortescue and Smith residences. All of them are said to lie within a distance of six city blocks of petitioners' property. No plat appears in the record and it is difficult for us to determine the location of those tracts with respect to petitioners' property.

The Oom tract, approximately five acres fronting on two streets, was valued by the witness at $7,000.00 per acre. In fact the School Board purchased it at that price in 1955. The assessed value placed on this tract as acreage by the Board was $5600.00, or approximately $1100.00 per acre. According to the values placed by the witness this seems to be the only tract, when compared to petitioners' values, that is considerably undervalued by the Board and out of proportion to its market value.

The Lee tract, cornering 200 by 300 feet, was zoned "residential" in 1954. The land only was valued by petitioners' witness at approximately $12,000.00 for residential use, and was assessed at a value of $6720.00, a rate of 56 per cent of market value.

The Foster tract fronting 330 feet on Stadium to a depth of approximately 300 feet, the witness valued at $7,000.00 per acre. The taxable value was placed at approximately $3200.00 per acre. The lots in the Fairhaven and Stadium additions were given a value by the witness of from one to two thousand dollars and were carried on the tax rolls at from $390.00 to $720.00. These lots were all unimproved and located in additions where the homes cost from $7,000.00 to $8,000.00. The Mulkey and Fortescue residences were of frame contruction and the assessed values in proportion to the market value placed by the witness were approximately 55 and 34 per cent respectively. No attempt was made by the witness to value the land and improvements

separately, but it is to be pointed out that so far as land values were concerned they were taxed generally on the same basis as the petitioners' land. According to the value placed by the witness on the Bernhardt land only of $9,000.00, the assessed value would be on the basis of about 66 per cent.

The witness placed a market value of $12,000.00 on the Bernhardt improvements, but this figure was impliedly rejected by Bernhardt himself. He pointed out that the witness was not acquainted with the usually expensive type of foundation employed in the construction of this residence. In fact Bernhardt stated to the Board that his home cost him the sum of $15,500.00. We, therefore have no explicit testimony as to the actual value of these improvements, but assuming them to be worth the cost, the improvements were valued for tax purposes at almost exactly 60 per cent of the market value.

The Board having determined that brick construction was more expensive than frame, it applied a rule of $3.00 per square foot basis for brick veneer homes and $2.60 per square foot for frame construction. This would account in some degree, at least, for the difference in the valuation between these two frame homes on the one hand and that of petitioner on the other.

As concluded by the trial court, the only comparable piece of property used by petitioners for comparative purposes was the adjoining Smith property that was exactly of the same dimension in land area and of similar brick veneer construction. The assessed land value on these two properties was exactly the same and the difference in improvements value was by reason of the fact that the Smith home had 200 square feet less floor space.

■ We conclude that the petitioners do not come within the purview of Dallas County et al v. Dallas National Bank, 142 Texas 439, 179 S.W. 2d 288, on which they rely. In that case the bank's unimproved tract of farm land was valued by the Board of Equalization for tax purposes at approximately seven times the value assessed on all of the adjoining tracts of the same kind and equal market value and devoted to the same use. Such glaring inequality could not be explained or justified on the basis of a mere difference in judgment and opinion. No such condition exists here. The most that can be said for petitioner is that there were some inequalities and possibly errors in judgment. No two appraisers acting independently could be expected to agree as to values on all properties and allowance must be

made for differences of judgment and opinion. The testimony shows that the Board had made a conscientious effort to resolve inequities that existed and were continuing to do so. The valuations assessed by the Board must be accepted and respected by the courts unless the evidence warrants a finding that the assessments were not made in good faith and as a result of honest judgment.

The authorities cited by petitioners do not support their contentions. Sam Bassett Lumber Co. v. City of Houston, 145 Texas 492, 198 S.W. 2d 879, passes principally upon the matter of limitations and not upon the question before us.

In Weatherly Independent School District v. Hughes, 41 S.W. 2d 445, the plaintiff's land was valued by the Board at $10.00 per acre and the land was taxed at 100 per cent of that value. It appeared that other land was taxed at considerably less than 50 per cent of its actual value. Evidently the action of the Board was found to have been taken deliberately as the Court relied upon the decision in Lively v. Missouri, K. & T. Ry. Co., 102 Texas 545, 120 S.W. 852.

In Simkins v. City of Corsicana, 86 S.W. 2d 792, the defense was that of a grossly excessive evaluation and the Court held that there was sufficient evidence to take that issue to the jury. But the Court went further to say:

"It is well settled that the decisions of tax boards in matters of valuation are quasi judicial in their nature, and therefore they are not subject to collateral attack, in the absence of fraud or other obvious violations of law. * * *."

In Town of Pleasanton v. Vance, 277 S.W. 89, opinion adopted, the trial court was held to have erred in sustaining a general demurrer to plaintiff's petition that had alleged discrimination and excessive valuation. The Court properly held that such defenses might be urged and that as against a general demurrer the plaintiff was entitled to put on his proof.

■ We find nothing in the record to indicate that the respondent's Board acted arbitrarily or in bad faith or used any improper scheme or method. In fact the evidence is all to the contrary. The Board is a quasi judicial fact finding body, and while its decisions are subject to review, courts are not authorized to substitute their views unless the testimony shows an abuse by

the Board of its powers. Port Arthur Independent School District v. Baumer, 64 S.W. 2d 412, writ dismissed.

We recently had occasion in State v. Whittenburg, 153 Texas 205, 265 S.W. 2d 569, to review the authorities and restate the rules that apply to an attack on valuations fixed by boards of equalization.[1] The proof here does not show fraud, want of jurisdiction, illegality or the employment of an arbitrary and erroneous plan or scheme of valuation.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered April 22, 1959.

1.—See also City of Arlington v. Cannon, 153 Texas 566, 271 S.W. 2d 414.