Perry R. BASS et al., Appellant,

v.

ARANSAS COUNTY INDEPENDENT SCHOOL DISTRICT et al., Appellee.

No. 19.

Court of Civil Appeals of Texas.

Corpus Christi.

March 25, 1965.

Rehearing Denied April 15, 1965.

R. Dan Settle, of Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Allen Wood, of Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellant.

Ross Terry, J. C. Hinsley, Austin, for appellee.

GREEN, Chief Justice.

This appeal is from a judgment entered after a jury verdict, granting recovery to appellees, Aransas County Independent School District, the State of Texas and Aransas County, plaintiffs below, for delinquent taxes for the years 1960 and 1961. The property involved, owned by the S. W. Richardson Estate of which appellants were independent executors, was St. Joseph Island, consisting of approximately 32,750 acres, divided for tax purposes into two classes of land, usable pasture land, and waste land, consisting of tidal flats, mud flats, sand dunes and shore grass flats.

Appellants resisted the suit on the grounds that the valuations upon which the assessments were made were grossly excessive, unequal, and made pursuant to an arbitrary and fundamentally erroneous method of valuation used by appellees' Boards of Equalization which resulted in placing an unequal and discriminatory share of the tax burden on appellants' property. Appellants also complain that appellees, in violation of their promise and agreement, refused to reduce the 1960 assessment to conform to the 1961 assessed value.

The jury, in answer to special issues, found: (1) there were 10,200 acres of usable pasture land on the island on January 1, 1960 and January 1, 1961; (2) the reasonable cash market value of the usable pasture land on said dates was $70.00 per acre; (3) the reasonable cash market value of the waste land on the island on said dates was $21.00 per acre; (4) appellees did not fail to send written notices of the meeting of the Boards of Equalization held June 9, 1960, to appellants; (5) appellants, their agents or employees, received such notices; (6) the Boards of Equalization did not follow a plan to value all pasture land in Aransas County at $100.00 per acre for ad valorem tax purposes for the year 1960; (7) the Boards of Equalization, except for the discount given St. Joseph Island, did not follow a plan to value all pasture land

in Aransas County at $100.00 per acre for ad valorem tax purposes for the year 1961.

It was stipulated between the parties, and the jury was so instructed, that the cash market value of all land on St. Joseph Island was the same on January 1, 1961, as on January 1, 1960, and that the amount of usable pasture land, as well as the amount of waste land, was the same in both years.

In September, 1959, appellees county and school district employed Thomas Y. Pickett & Co., specialists in appraising minerals, real estate, utilities and industries for taxing agencies, to assist them in appraising taxable property, so that it could be equalized for taxation purposes. Such a contract is valid, and it is not under attack here. Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333; Tatton v. Aransas County, Tex.Civ.App., 359 S.W.2d 200. Bill Taylor, head of their land appraisal department, was placed in charge of this project by Pickett. He and his crew worked on this appraisal in Aransas County from September, 1959, until late Spring, 1960.

Appellants mailed their 1960 renditions to each of the taxing bodies in January, 1960, based on the 1959 valuations. These renditions proved unsatisfactory to the taxing authorities, and both county and school district decided to have this property revalued by their 1960 boards of equalization. Arts. 7206, 7211, 7212, 7343, Vernon's Ann. Tex.Civ.St. Though an issue of fact developed as to whether appellants received notice of such decision as provided by subd. 5, Art. 7206, appellants do not deny that the evidence was sufficient to support the jury's answers to special issues 4 and 5, that appellees sent and appellants received such notices.

In June, 1960, the boards of equalization for county and school district met for the purpose of hearing witnesses and revising assessed valuations as the facts might show proper. While the two boards met together for convenience to hear the testimony and reports at the same time, they did not intermingle or sit as one board, each having its own separate members and chairman and each acting for its own principal. Appellants did not appear, nor did they have any representative present.

At this meeting, after hearing sworn testimony from witnesses, including Taylor, the boards each raised materially the valuations of appellants' St. Joseph Island property. From the evidence, the boards estimated that approximately half of the 32,750 acres on the island was usable pasture land, and the other half was waste land, and set a value of $75.00 per acre on the former and $26.25 per acre on the waste land, averaging the two figures to place a valuation of $50.00 per acre on all of the land. This was a very substantial increase over the valuations fixed for 1959. Assessments were based on a percentage of 20% of market value for state and county, and 25% for school district. Appellants were unaware that the valuations had been raised until in October, 1960, when they received notices from the tax collectors of appellees of the taxes due for 1960. In January, 1961, appellants sent the tax collectors their checks for 1960 taxes computed upon the valuations set out in their voluntary renditions, the same as for the year 1959. These checks were returned by the respective collectors as unacceptable. So far as shown in the record, the taxes for the years 1960 and 1961 have not been paid, nor has any tender of the amount claimed to be due by appellees been made by appellants.

Shortly after appellants received the tax notices in October, 1960, their tax representatives contacted proper officials of appellees county and school district concerning the increased valuations. Further investigation was made by Taylor and appellees' taxing authorities, and it was determined that the usable pasture acreage was overcalculated, and the amount of waste land was under estimated. At the 1961 meeting of the two boards of equalization, attended by representatives of appellants,

adjustments on such acreage were made for the year 1961, and the valuations of the property for 1961 were reduced to $70.00 per acre for usable pasturage land and $21.-00 per acre for waste land. No change was made in the valuation or assessments for 1960. Such valuations were unsatisfactory to appellants, and they have refused to pay taxes based on the assessments for said two years, which refusal resulted in this suit.

■ Appellants in their first point of error state that the trial court erred in failing to grant their motion for judgment non obstante veredicto since the evidence established as a matter of law that appellees' assessments of St. Joseph Island were unequal and grossly excessive in comparison to assessments of other property. We have found no testimony in the record of the assessed value of any other tract of land in Aransas county with which to make a comparison with the assessed value of appellants' land. The only evidence of assessments of other property was by the introduction of the total amount of assessed value of all real estate in the county, including improvements, less mineral rights which are not here involved, for the years 1959 and 1960. This evidence shows to have been introduced by appellants to prove that the percentage of increase in the assessed valuation of St. Joseph Island property in 1960 over the 1959 assessed values was greater than the percentage of increase in assessed value of the total of all other taxable real estate in the county for the same two years. However, appellants did not attempt to show whether such other property had been assessed at less than market value in 1959, or that in 1960 it was assessed at values more favorable to the owners than was appellants' property, or to show that any facts existed calling for a like percentage of increase in such other property. In the absence of such showing, and in the total absence of any testimony of the assessed value of any other pasture land or waste land in the county, appellants failed to make any

showing of discrimination against their property, or that their assessments were unequal and grossly excessive in comparison with assessments of other property. State v. Houser, 138 Tex. 28, 156 S.W.2d 968; Dallas County v. Dallas National Bank, 142 Tex. 439, 179 S.W.2d 288; State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569; City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414; Whelan v. State, 155 Tex. 14, 282 S.W.2d 378; Bernhardt v. Port Arthur Independent School District, 159 Tex. 488, 324 S.W.2d 163; State v. Federal Land Bank of Houston, 160 Tex. 282, 329 S.W.2d 847; City of Orange, Texas v. Levingston Shipbuilding Co., 5 Cir., 258 F.2d 240; Westerman v. Vernon Independent School District, Tex. Civ.App., 354 S.W.2d 431.

■ The rule has been definitely established in Texas that where an aggrieved taxpayer fails to avail himself of the affirmative remedies of injunction and mandamus to prevent a taxing authority from putting an invalid and arbitrary plan of taxation into effect, but waits until suit is brought against him for delinquent taxes, his right to relief is limited. Once such a plan is put into effect, in the absence of a showing, by comparison of the assessments against his property with assessments against other like property, of a gross discrimination against him, the land owner may defeat recovery of taxes only to the extent that they are excessive, and he must assume the burden of proving excessiveness. He must show that the use of such a plan worked to his substantial injury, and the extent of such injury. Authorities cited in preceding paragraph; also East and Mount Houston Independent School District v. South Texas Lumber Company, 153 Tex. 795, 271 S.W.2d 795; City of Houston v. McCarthy, Tex.Civ.App., 371 S.W.2d 587 writ ref. n. r. e.; Darby v. Borger Independent School District, Tex. Civ.App., 386 S.W.2d 572.

We have not found any evidence showing the extent of the claimed excessiveness

of the taxes assessed against appellants, or that by the assessments they have suffered substantial injury.

■ In connection with appellants' contentions of gross excessiveness of the valuations placed on their land, attention is called to the fact that on the basis of the appraised valuations, the respective assessed valuations on their property in 1961 by county and State were $14.00 per acre on pasture land and $4.25 per acre on waste land, and only slightly more in 1960. Assessed valuations of the school district were comparable, based on 25% of market valuation instead of 20%. In the absence of any evidence of assessed valuations of other tracts of land in the county, we do not feel that such assessed valuations were proved to be so grossly excessive as to establish invalidity of the assessments.

Appellants, on page 2 of their brief, concede that the findings of the jury, heretofore set out in this opinion, would in effect sustain the validity of the assessments. Their motion for judgment n. o. v. depended on the trial court setting aside such findings. In the course of this opinion it is our intention to show that the verdict of the jury was based on sufficient evidence, and was not against the overwhelming preponderance of the evidence, and that the trial court did not err in declining to disregard such verdict.

For these reasons, and for others which will be hereafter discussed, the trial court correctly overruled appellants' motion to disregard the findings of the jury and render judgment for appellants. Appellants' first point is overruled.

■ By their second point, appellants contend that there was no evidence and insufficient evidence to support the jury's answer to special issue No. 1 that there were 10,200 acres of usable pasture land on the island on January 1, 1960 and 1961. It is a fact that Taylor and members of appellees' 1961 boards of equalization had accepted the figure of 8500 acres of such land given them by some of appellants' representatives. However, on the trial two of appellants' expert appraisal witnesses, Lewis and Slay, testified that in January, 1961, there were 10,200 acres of usable pasture land on the island, and another, Crow, said there were 10,048 acres of such land. Clearly, the jury reached the figure of 10,200 acres of usable pasture land from the testimony of appellants' own witnesses. This point is overruled.

Appellants' third and fourth points deal with the proposition that there was no evidence to support the jury's answer to Special Issue No. 2 that the cash market value of the usable pasture land on the island on January 1, 1960 and 1961, was $70.00 per acre, and that such finding was contrary to the overwhelming preponderance of the evidence. Their fifth and sixth points raise the same contentions as to the answer of the jury to Special Issue No. 3, that the cash market value of the waste land on such dates was $21.00 per acre.

Appellants produced quite an array of expert land appraisers who, after testifying concerning their qualifications and the basis for their opinions as to value of the property, stated that in their opinions the usable pasture land had a cash market value of not over $20.00 per acre, and the waste land had such a value of not over $5.00 per acre. Their testimony covers 241 pages of the statement of facts, and is quite detailed in giving the reasons why this property, situated on a long, narrow island, difficult in accessibility to the mainland, with its disadvantages as to profitable ranching, had such low value.

However, appellants also introduced in evidence without reservations the statement of County Commissioner Sparks in his deposition that in his opinion the land was worth the amounts at which appellees' boards of equalization valued it, both in 1960 ($75.00 per acre) and 1961 ($70.00 per acre) for the pasture land.

Taylor was the only witness as to market value placed on the stand by appellees. His qualifications as an appraiser of land values included many years as a rancher in south Texas, land appraiser for the tax assessors office in Nueces County, manager and valuation appraiser for the Nueces County Tax Payers Association, senior appraiser in the tax office of the city of Corpus Christi, Texas, and four years in charge of real estate appraisals for Thomas Y. Pickett and Co.

 He testified at considerable length, both on direct and cross examination, as to the procedure followed by him in determining the market value of appellants' property, and after considering its disadvantages as island property, concluded that it had a reasonable cash market value of $70.00 per acre for the usable pasture land, and $21.00 per acre for the waste land. Although appellants' brief has much criticism of Taylor's testimony, we consider this as going only to the credibility of the witness and the weight to be given his testimony, and the jurors were the sole judges of that. Having considered all of the evidence on the issue of value, we find that it was sufficient to support the jury's answers to Special Issues No. 2 and No. 3, and that such answers were not contrary to the overwhelming preponderance of the testimony. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126.

Tatton v. Aransas County, 4th Court of Civil Appeals, 359 S.W.2d 200, n. w. h., arose in Aransas County, and also involved the validity of the county and school district assessments for the year 1960. We consider the opinion in that case concerning the issues of arbitrary plan of taxation and methods and rates of valuation as strongly supporting, if not controlling of, the determination of this case on such issues. The same basis of valuation by the same boards of equalization (1960) based on appraisals made by the same tax appraisal firm, Thomas Y. Pickett & Co., was sustained in the Tatton case. It is to be noted that appellants in the present case were accorded a lower and more favorable valuation, both as to pasture land and waste land, than was given the taxpayer in the Tatton case.

Appellants' seventh and eighth points attack the jury's answer to Special Issue No. 6, stating that there was no evidence to support such answer and that the finding was contrary to the great weight of the evidence. Their ninth and tenth points state the same with reference to the jury's answer to Issue No. 7.

Special Issue No. 6 reads:

"Do you find from a preponderance of the evidence that the Boards of Equalization followed a plan to value all pasture land in Aransas County at $100.00 per acre for ad valorem tax purposes for the year 1960?

"Answer: No."

Special Issue No. 7 reads:

"Do you find from a preponderance of the evidence that except for the discount given St. Joseph's Island the Boards of Equalization followed a plan to value all pasture land in Aransas County at $100.00 per acre for ad valorem tax purposes for the year 1961?

"Answer: No."

It will be noted that Issue No. 6 did not exclude any pasture land in the county, not even appellants' land on St. Joseph Island. Appellants did not object to the form of the issue. Since appellants' island pasture land was valued by the 1960 boards at $75.00 per acre for ad valorem tax purposes, the jurors were required to answer the issue "No".

 When appellees introduced in evidence their official records showing the assessment of the taxes against the property of appellants, together with the testimony of their tax assessor-collectors that the records showed that such taxes were

due, delinquent and unpaid, a prima facie case for the validity of the assessed valuations and the collection of such taxes was made. State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569; City of Houston v. McCarthy, Tex.Civ.App., 371 S.W.2d 587, writ ref. n. r. e. Thereafter the burden rested on appellants to produce proof meeting the requirements of law to invalidate the assessments.

■ It was not sufficient in order to establish a defense that appellants prove that their property was overvalued, or that the taxes were excessive.

"The rule has been repeatedly announced that, in the absence of fraud or illegality, the action of a board of equalization upon a particular assessment is final; and, furthermore, that such valuation will not be set aside merely upon a showing that the same is in fact excessive. If the board fairly and honestly endeavors to fix a fair and just valuation for taxing purposes, a mistake on its part, under such circumstances, is not subject to review by the courts." State v. Mallet Land & Cattle Co., 126 Tex. 392, 88 S.W.2d 471. See also to the same effect Bernhardt v. Port Arthur Independent School District, 159 Tex. 488, 324 S.W.2d 163; State v. Whittenburg, supra; State v. Houser, 138 Tex. 28, 156 S.W.2d 968.

Appellants' attempt to invalidate the assessments of appellees, both in the trial court and on this appeal, is based on their complaint that the boards of equalization in 1960 and in 1961 illegally and arbitrarily, without any regard to the actual market value of the property, adopted a plan to value *all* pasture land in Aransas County at $100.00 per acre, and *all* wasteland at between $30.00 and $35.00 per acre, and that because of such invalid, arbitrary plan, appellants' property was over valued and over assessed, and that their taxes were grossly excessive and unequal. No issue was requested or submitted concerning the wasteland.

The only evidence relied on by appellants as establishing such a plan was given by County Commissioner Sparks, and County Judge Wendel. Sparks testified that "the Board" (1960) wanted all pastureland kept at $100.00 per acre and that Pickett and Company recommended this, and were instructed "to proceed in that manner". Wendel stated that in 1960 they attempted to place all ranchland at a hundred dollars an acre, and that in 1961 it was the same with the exception of possibly some discounts on some low land. Appellants in their brief state that this is the only testimony offered on these issues, and refer to no other evidence as tending to prove that appellees followed what appellants rely on as the illegal, arbitrary plan to value all pasture land in the county at $100.00.

■ Neither Sparks nor Wendel testified to any facts showing, or even indicating, that the equalization boards for either county or school district actually put any such plan in effect, or actually placed a value of $100.00 on *all* pasture land in Aransas County. The appraisers could not and did not make any final decisions on what value was actually to be placed on property for taxation purposes; their function was to appraise and advise. Whelan v. State, 155 Tex. 14, 282 S.W.2d 378; Darby v. Borger Independent School District, Tex.Civ.App., 386 S.W.2d 572. There is no testimony that land of the value of less that $100.00 per acre or that land of a value of over $100.00 per acre, was valued for taxation purposes at $100.00 per acre by the boards of equalization, and assessed on that basis by appellee's taxing authorities. In fact there is no evidence in the record that any pasture land in the county was actually valued by the boards or assessed by appellees on a basis of $100.00 per acre in either 1960 or 1961. The most that can be said is that Sparks, whose testimony in this regard is limited to the 1960 boards, testified that they want-

ed the pasture land kept at $100.00 per acre, and Wendel stated they attempted to place pasture land at $100.00 per acre, though he further testified that in 1961 some low land pasture land was possibly valued at less. There is no testimony that these desires were accomplished in fact by the results of the appraisals, or by the later results on the tax rolls.

There was testimony that the figure of $100.00 per acre was used by the boards of equalization as a basis for arriving at the market value to be placed on appellants' pasture land on the island in 1960 and in 1961. The fact that this figure was reduced by both equalization boards to a reasonable market value of $75.00 per acre in 1960, and $70.00 per acre in 1961, due to disadvantages in the property's location, productivity, and for other reasons, is convincing evidence that neither of the boards adopted an illegal, arbitrary plan to place a value on this property regardless of what they considered its actual market value to be. Though Special Issue No. 7 excluded the discount given appellants' island pasture land in 1961, Wendel's testimony, on which appellants rely, does not state that *all* other pasture land in the county was valued by the boards in 1961 at $100.00 per acre.

■■■ In the absence of evidence that such a plan of taxation as is depended on by appellants was actually adopted by appellees' boards of equalization, and was placed in effect on appellees' tax records, in either 1960 or in 1961, we hold, not only that the evidence was sufficient to support the jurys' answers to Special Issues Nos. 6 and 7, but that any other answer to either would not be supported by evidence.

In view of our disposition of this appeal, we do not find it necessary that we pass upon appellees' counter proposition that by failing to appear before the boards of equalization after receiving due notice thereof in 1960, appellants are precluded from obtaining any relief in court from the tax assessments based on the boards' valuations for that year.

■■■ By their eleventh point of error, appellants contend the trial court erred in failing to submit their specially requested Issues Nos. 1 and 3. Requested Issue No. 1 inquired as to whether the value of the waste land on St. Joseph Island was (adversely affected) (depreciated) because of the large amount thereof as compared to usable pasture land. Requested Issue No. 3 inquired as to whether there was pasture land in Aransas County having a cash market value in excess of $100.00 per acre as of January 1, 1960. The trial court properly refused to give such issues. The first issue requested, besides being duplicitous, was merely evidentiary of Special Issue No. 3 as given in the court's charge, and inquires of no ultimate fact issue. As to requested Issue No. 3, the fact that there may be pasture land in Aransas County having a cash market value in excess of $100.00 per acre, without a further finding that such property was valued and assessed by appellees on a different basis from property of appellants, causing substantial injury to appellants, would be of no assistance to appellants. There was no evidence in the record to support such a finding.

Appellants' twelfth point of error reads as follows:

"The trial court erred in rendering judgment against appellants upon appellees' assessment for the year 1960, because the evidence conclusively establishes that appellees agreed that the market value of St. Joseph Island was the same on January 1, 1960, and January 1, 1961, and had contracted with appellants to reduce the 1960 assessment to conform to the 1961 assessment."

As has heretofore been stated, in October, 1960, after both boards of equalization had finished their work for 1960 and had adjourned, and after the tax collectors had

sent their tax notices to appellants, representatives of the latter on learning of the increase in the valuations and taxes contacted tax officials of county and school district and convinced them that a mistake had been made in the acreage calculations with reference to usable pasture land and waste land. In connection therewith, county commissioner Sparks was asked on his deposition the following question, to which he made reply as stated:

Q. "Didn't the Board tell Mr. Kirkwood that an error had been made and the property had been overvalued and that if they would wait until '61 it would be corrected and the Board would put the '60 valuation the same as the '61 valuation?"

A. "Yes, sir."

■ This is the evidence relied on by appellants to establish the "contract" mentioned in their point of error. No time when said "contract" was made is stated, although it must have been in October, 1960, or later, after the 1960 boards had adjourned. Though the county and the school district each had its own board of equalization, the question asks only generally as to "the Board", without any other identification. If it be the contention of appellants that the "Board" of 1960 (whether the County "Board" or the school district "Board" is not stated) contracted to bind the "Board", of 1961 to change and reduce the 1960 assessments, such an agreement is obviously null and void for the reason that it is beyond the power of one board of equalization to bind the actions of a future board. Boards of equalization are quasi-judicial fact-finding bodies, and their decisions are quasi-judicial in their nature. Bernhardt v. Port Arthur Independent School District, 159 Tex. 488, 324 S.W.2d 163. In order to set aside the findings of such a board, it is necessary to show either that the board had no jurisdiction, or that it acted unlawfully to the prejudice of the complainant. Victory v. State, 138 Tex. 285, 158 S.W.2d 760.

■ The boards of equalization for 1961 could not be bound by any such statement by Sparks. "The commissioners' court is a court of record, and speaks through its minutes, and not by the mouths of the members of the body." Judge Gaines in Gano v. County of Palo Pinto, 71 Tex. 99, 8 S.W. 634. There is no record of any such "contract" entered into by either of the two boards of equalization. Nor is there any evidence of compliance by appellants, since they have made no offer to pay the taxes as assessed for 1960, or 1960 taxes based on the 1961 valuations.

■ Appellants invoke Art. 7345d, V.A.T.S., as authorizing the reopening of the 1960 equalized assessment by a subsequent board of equalization. This act invests Commissioners Courts with authority to reopen, reconsider, correct and adjust assessments current or delinquent, and to reassess properties in cases where it is established that the former assessments are inequitable, excessive, out of proportion to taxable value or are discriminatory, or where the value of the property has since depreciated. If the application of the provisions of this statute was squarely before us by reason of the 1961 boards actually having attempted to reopen, reconsider, correct and adjust the valuations of the 1960 boards, which they did not attempt to do, we would be inclined to hold the act unconstitutional insofar as it authorizes reopening and reconsideration of *valid* assessments, as being in violation of Texas Constitution, Art. 3, Secs. 52 and 53, and Art. 8, Sec. 10, Vernon's Ann.St. While we do not find where an appellate court has passed upon the constitutionality of the statute, the State Attorney General has issued a series of opinions ruling it unconstitutional and void in so far as it applies to valid assessments. Attorney Generals Opinions No. 0–930 (1939); No. 0–6257 (1944); and No. v–1517 (1952). See also Rowan Drilling Co. v. Sheppard, 126 Tex. 276, 87 S.W.2d 706.

The valuation by the boards and subsequent assessment of this property in 1960, though probably a mistake was made in miscalculating the respective amounts of usable pasture land and waste land, was not invalid or illegal, and is not subject to collateral attack. State v. Houser, 138 Tex. 28, 156 S.W.2d 968; State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569.

Opinions of the Attorney General are not binding upon the courts, and are not judicial precedents, but are persuasive and entitled to consideration, and we feel that the correct conclusion is reached in the aforementioned opinions. However, our action in overruling appellants' 12th point of error is based primarily on the proposition that the evidence does not show that any such contract as is relied on existed.

By their thirteenth point of error, appellants say that the trial court erred in overruling their objections to testimony regarding improvements and personalty situated on the island, when the values thereof were not in issue, and the jury might be prejudiced by such testimony. Appellants in their brief do not refer us to the particular testimony introduced over their objections, nor do they point out the objections made or the rulings of the court. The statement in their brief refers very generally to extensive interrogation of three of their witnesses, and that is all. We therefore are unable from the brief to determine anything as to this point. We have carefully read the testimony of the witnesses referred to, and find no ruling by the court adverse to appellants concerning the introduction of any testimony of improvements and personalty on the island which we consider to show reversible error.

The point is overruled.

Appellants' fourteenth point complains of alleged jury misconduct. Their amended motion for new trial having alleged such misconduct, and affidavits of jurors having been attached to such motion, the trial court at the hearing on said motion heard testimony on the issue. Seven jurors testified at this hearing. In ruling on this point, we shall be guided by the language of Justice Griffin, speaking for the Supreme Court, in Brawley v. Bowen, 387 S.W.2d 383, as follows:

"Where no express findings are filed, it is presumed on appeal that the trial court found all controverted facts in support of its judgment overruling the motion and that no misconduct occurred. Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493 (1956); Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770 (1932); Milstead v. Aynesworth, 341 S.W.2d 942 (Tex. Civ.App., 1960, writ refused, n. r. e.). If the evidence offered at the hearing on the motion for new trial is conflicting as to whether or not misconduct occurred, the decision of the trial court on the question is binding on appeal. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943); Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62 (1945); State v. Wair, 163 Tex. 69, 351 S.W.2d 878 (1961)."

One of the remarks supposedly made in the jury room was by juror Miller that S. W. Richardson was one of the wealthiest men in the world, and could pay the taxes, and that the school district could use the taxes. The testimony shows that such statement, if made, was heard by only two or three jurors, was not openly discussed by the jury, and was merely an idle remark not followed through. There is some conflict as to whether the remark was made. At any rate, such remark, not shown to have had any effect on the jury's verdict, is not sufficient, in view of the trial court's ruling, to show reversible error. Hauck v. Price, Tex.Civ.App., 374 S.W.2d 463, n. w. h.; St. Paul-Mercury Indemnity Co. v. Bearfield, Tex.Civ.App., 296 S.W.2d 956, writ ref. n. r. e.; Harris v. Levy, Tex.Civ.App., 217 S.W.2d 154, n. w. h.; Menefee v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287, writ ref. w. m.

Another alleged ground of misconduct is that several members of the jury had been on the island, and used information gained by them personally to mention that an exhibit introduced by appellants to show the amount of waste land on the island was greatly exaggerated. We find a conflict in the testimony of the jurors on this matter. Some heard some discussion to such effect, so they said; others did not; and juror Le Blanc testified that a couple of times some of the jurors said they had been on the island, but the jury foreman told them that they were not supposed to relate any personal experiences, so they shut up. We find no harmful error in the record as to this. Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493; Walker v. Thompson, Tex.Civ.App., 287 S.W.2d 556, writ ref. n. r. e. Appellants cite as jury misconduct the fact that some jurors discussed the possible value for hunting and fishing and other recreational activities on the island. As pointed out by one of the jurors, there was considerable testimony introduced on the trial with reference to use of the island property for these purposes and such discussion was not improper. Further, there was definite conflict of testimony as to whether hunting and fishing possibilities of the island was mentioned as an item of value of the land.

We have carefully read the evidence given on the motion for new trial, and have considered all of appellants' charges of misconduct of the jury, and have concluded that, in view of the trial court's ruling on appellants' motion for a new trial, no material misconduct was established from which injury probably resulted to appellants. Rule 327, Texas Rules of Civil Procedure; Brawley v. Bowen, Sup.Ct., supra; Cree v. Miller, Tex.Civ. App., 255 S.W.2d 565, writ ref. n. r. e.; Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364; Allan v. Materials Transportation Company, Tex.Civ.App., 372 S.W.2d 744.

Appellants' fourteenth point of error is overruled.

However, even a finding on our part that jury misconduct materially influencing the verdict in the particulars complained of occurred, if we were so inclined to hold, would not affect the judgment entered by the trial court. Earlier in this opinion we have held that appellants failed to produce evidence raising a fact issue upon the very basic proposition on which their defense rested, i. e., that the valuations upon which the assessments were based were made pursuant to an invalid, arbitrary and fundamentally erroneous method of valuation used by appellees and their boards of equalization which resulted in placing an unequal and discriminatory share of the tax burden on appellants' property. We further held that by failure to offer any evidence of either market value or assessed value of other tracts of pasture land or waste land in the county by which to make a comparison with the valuations and tax assessments placed on appellants' property, they failed to raise an issue of fact that their taxes were unequal or excessive, or that they suffered substantial injury.

Finding no reversible error in the record, the judgment is affirmed.