COASTAL STATES PETROLEUM
COMPANY, Appellant,

v.

CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT and Corpus Christi Junior College District, Appellees.

No. 13–85–124–CV.

Court of Appeals of Texas,
Corpus Christi.

March 5, 1986.

Rehearing Denied March 27, 1986.

Ken Dahlberg, Wood & Burney, Corpus Christi, M. Frank Powell, M. Frank Powell & Associates, Austin, for appellant.

Hal George, Asst. City Atty., Corpus Christi, for appellees.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

This suit involves the valuation of crude oil inventory for ad valorem tax purposes. Although appellant brings fourteen points of error, one issue controls the outcome of this case: what constitutes "market value" of a refinery's crude oil for the tax years 1980 and 1981.

No dispute exists over the quantity or type of products owned by Coastal States Petroleum Company within the limits of the taxing jurisdictions on the dates involved. It is also undisputed that property must be taxed according to its value. TEX. CONST. art. VIII, § 1.

The principal problem as reflected in the appellate briefs and oral argument thereon is whether the crude oil inventory at appellant's refinery must be valued for tax purposes at a "book value" price, pursuant to Federal Energy Guideline Rule 212.183(b) ("pricing rule") as asserted and interpreted by appellant, or assessed at comparable market value. Appellant contends that "book value" should be the measuring figure, thus evaluating a barrel of crude oil in storage on January 1, 1980 at $15.64, and on January 1, 1981 at $15.65. Appellees, on the other hand, used comparable market value to value appellant's crude oil for 1980, at $21 per barrel and for 1981, at $28 per barrel. Appellant argues that the valuation method used by appellees for appellant's crude oil constitutes an arbitrary and fundamentally erroneous plan, scheme, method or formula of taxation which directly resulted in substantial injury to appellant. Appellant attacks only the appraised value of its crude oil inventory and not any other property.

At trial, Coastal States Petroleum Company ("Coastal") assumed the burden of proof by stipulating to the facts necessary to establish the taxing authorities' prima facie case, and was allowed to open and close. TEX.R.CIV.P. 266. In addition, the parties stipulated to the following pertinent facts:

(1) Appellant tendered into the Court's Registry payment of $304,127.18 for 1980 taxes due and $88,583.30 for 1981 taxes due to the appellees.

(2) The tax rates adopted by each appellee for 1980 and 1981 are undisputed.[1]

(3) A reasonable attorney's fee for appellees is ten percent (10%) of the difference between the tax tendered by appellant and the tax, penalty, and interest, if any, determined by the Court to be owed.

(4) The tank composition reports and tax records applicable to appellant for tax years 1980 and 1981 were stipulated as true and correct copies.

---

1. The tax roll for 1980 was adopted by appellees' Boards of Equalization, assessing appellant's property subject to tax at a fair market value of $36,513,010.00 for the 1980 tax year. Appellant took no action to contest or appeal that finding.

Appellee Corpus Christi Independent School District adopted a tax rate of 83¢ per $100 valuation for tax year 1980 and appellee Corpus Christi Junior College District tax rate was 11½¢ per $100 valuation for a total ad valorem tax rate of 94½¢ per $100 valuation. Applying that tax rate to the fair market value found by appellees' Board of Equalization for appellant's property resulted in a tax liability on appellant's behalf of $345,047.94 for the tax year 1980. Subtracting appellant's partial payment resulted

in a tax liability of $187,323.37 as of October, 1984.

The tax roll for 1981 was likewise duly adopted by appellees' Board of Equalization and assessed appellant's property at a fair market value of $12,729,070.00 for the 1981 tax year. The tax rate adopted by appellee Corpus Christi Independent School District was 81.37¢ per $100 valuation; the tax rate for Corpus Christi Junior College District was 10.85¢ per $100 for a total ad valorem tax rate of 92.22¢ per $100. This resulted in a tax liability of $117,387.48 for the 1981 tax year, plus penalty and interest of $95,402.00. This account reflected a partial payment on March 31, 1983 of $64,734.01.

Appellant claims that as a result of appellees' appraisals, appellant's taxes on its crude oil for 1980 and 1981 would be excessive as follows:

| Tax on Appellees' "Market Value" | | Tax on Appellant's "Book Value" = "Market Value" | Excess Tax |
|---|---|---|---|
| 1980: | $160,323.78 | $119,403.02 | $40,920.76 |
| 1981: | 65,293.23 | 36,489.05 | 28,804.18 |
| TOTAL: | $225,617.01 | $155,892.07 | $69,724.94 |

The appellant brings fourteen points of error, all argued together with regard to the factual and legal sufficiency of the evidence. All fourteen points of error are contingent on appellant's main argument that their "Book Value" mandates the taxable market value. All points fail if appellant is incorrect in this assertion.

The jury returned answers to the special issues as follows:

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Plaintiff's Board of Equalization employed an arbitrary or fundamentally erroneous method of valuing Defendant's crude oil inventory in 1980?

Answer "We do" or "We do not."

Answer: *We do not*

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the Plaintiff's Board of Equalization employed an arbitrary or fundamentally erroneous method of valuing Defendant's crude oil inventory in 1981?

Answer "We do" or "We do not."

Answer: *We do not*

### SPECIAL ISSUE NO. 3

What do you find from a preponderance of the evidence to be the fair market value of Defendant's crude oil inventory for 1980?

Answer in dollars and cents per barrel.

Answer: *$21.00*

### SPECIAL ISSUE NO. 4

What do you find from a preponderance of the evidence to be the fair market value of Defendant's crude oil inventory for 1981?

Answer in dollars and cents per barrel.

Answer: *$28.00*

### SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that the valuation placed on Defendant's crude oil inventory by the Board of Equalization for 1980 resulted in substantial injury to Defendant?

Answer "We do" or "We do not."

Answer: *We do not*

### SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the valuation placed on Defendant's crude oil inventory by the Board of Equalization for 1981 resulted in substantial injury to Defendant?

Answer "We do" or "We do not."

Answer: *We do not*

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that "LIFO" was the consistent and historical accounting practice of Defendant?

Answer "We do" or "We do not."

Answer: *Yes we do*

Robert Shaw, Director of Ad Valorem Taxes for Coastal States, testified at trial that according to calculations (based on book value, LIFO basis) of fair market value per barrel, appellant would be paying 34.27% more taxes for 1980 and 78.94% more for 1981. He claimed this difference

constitutes substantial injury, and appellees' appraisal that totally ignores the refiner's crude oil "pricing rule," is substantially erroneous.

Jack Stone, appraiser for appellees, recommended the price of $21 per barrel for 1980, based on an average of prices and information from the Department of Energy, posted prices from the Texas Railroad Commission of crude oil in Texas, and other refineries' values of crude. The OPEC price at the time of Stone's appraisal was $25.00–26.00 per barrel. Stone reduced that figure by 15% to account for any entitlements he did not know of available to the companies that could have some bearing on the price. Stone discussed inventory cost figures with appellant's representatives, but did not independently appraise appellant's crude oil after those discussions. The 1981 price per barrel valuation on such basis according to Stone was $28.00 per barrel.

It is clear that the average fair market value which Stone presented to the Board of Equalization hearing on August 21, 1980 did not specifically take into account the Department of Energy or Federal Energy Guidelines or pricing rules. Stone testified at trial that in fact, he did not know about the guidelines, did not consider them in his calculations, and that the restrictions should not affect the fair market value of appellant's property. Nonetheless, his testimony as to fair market value was before the jury. In addition, there was testimony from an independent appraiser that the market value based on a replacement value for the inventory at the appropriate valuation dates was $29.00 per barrel for the 1980 tax year and $33.05 for the 1981 tax year.

Appellee witness Stone distinguished between price paid and book value and testified that "the pricing rule" would not govern the sale of crude to require its sale at book value and testified that he knew of no instance where "the guideline" or "pricing rule" was so enforced.

Appellant asserts that the major error in appellees' valuation is their failure to consider the specific impact on appellant by the restrictions and regulations imposed by the federal government on appellant's ability to sell its crude oil.

Coastal claims that under the "LIFO" (last in first out, if lower) method of inventory evaluation,[2] approved by the company auditors, the average book values, including transportation costs, for crude oil by the barrel, were $15.64 for 1980, and $15.65 for 1981. Appellant claims that these values are the proper figures for ad valorem valuation, necessary to avoid penalties for violating the Federal Energy Pricing Rules. In effect, appellant asserts that if the crude oil was valued differently, if they sold the oil for more than their book value costs, they would violate the law and therefore be subject to a $20,000 penalty, $40,000 fine, or a year in prison.

■ We agree that federally imposed restrictions on prices are recognized by Texas courts as affecting market value of the property subject to those restrictions. *Exxon Corp. v. Middleton*, 613 S.W.2d 240 (Tex.1981); *Polk County v. Tenneco, Inc.*, 554 S.W.2d 918 (Tex.1977); *Texas Eastern Transmission Corp. v. Sealy Independent School District*, 580 S.W.2d 596 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). However, each pricing rule must be considered in its proper context.

In addition, the jury is not required to accept one party's arguments, but makes its decision by a preponderance of the evidence. As the Beaumont Court of Appeals noted in *Southwestern Settlement and Development Corp. v. State*, 282 S.W.2d 78 (Tex.Civ.App.—Beaumont 1955, writ ref'd n.r.e.):

> [t]he findings ... fixing the reasonable cash market value per acre of Defendant's lands ... at $90 and $95 per acre, instead of the $39.25 testified to by Mr. Coats, show that the jury did not accept Mr. Coats' opinions, and they were not required to do so, for several reasons

**2.** Coastal asserted a LIFO valuation on the average price per barrel in its crude oil inventory.

other than the fact that his testimony concerning values was only an opinion. And for the same reasons they were not required to accept the findings made in his reports.

At the trial court level in the case at bar, although the jury found that "LIFO" was the consistent and historical accounting practice of appellant, they upheld the assessments of the Board of Equalization, found that the Board did not employ an arbitrary or fundamentally erroneous method of evaluating appellant's crude oil inventory, and found that the Board's valuation did not result in substantial injury to appellant.

■ When the question of market value is central to the taxpayer's claim, as here, that question is one of fact for the factfinder. The questions of gross excessiveness and of substantial discrimination, however, are ones of law for the court. *Polk County* at 920. The court must decide as a matter of law whether the assessment by the taxing authority was so excessive or so discriminatory as to warrant the setting aside of that assessment. *Cf. Whelan v. State*, 282 S.W.2d 378, 385 (Tex.1955).

It is now well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such Board can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. *State v. Whittenburg*, 265 S.W.2d 569 (Tex.1954) (citing cases). Moreover, when their official action is attacked it will be presumed that such Boards discharged their duties as public agencies according to law and acted in good faith. *Id.* at 572–73 (citing cases).

■ Because the statutory language is clear that valuations made by boards of equalization "shall be final," and because decisions made by the boards are quasi-judicial in nature, the courts of this state will not set aside board valuations absent compelling circumstances. *Polk County* at

919; *Burnhardt v. Port Arthur Independent School District*, 324 S.W.2d 163 (Tex. 1959); *State v. Houser*, 156 S.W.2d 968 (Tex.1941).

The court in *Pierce v. City of Jacksonville*, 403 S.W.2d 512, 516 (Tex.Civ.App.— Tyler 1966, writ ref'd n.r.e.) noted that:

In cases such as this, where it is contended that the valuations are excessive, the court hears and considers evidence as to value for the purpose of determining whether the property has been so grossly over-valued as to result in harm or injury to the complainant. *Montgomery County v. Humble Oil & Refining Co.*, 245 S.W.2d 326 (Tex.Civ.App.—Beaumont 1951, writ ref'd n.r.e.).

Before the valuation can be said to be grossly excessive, the assessed value must be so far above the fair cash market value as to shock a correct mind and thereby raise a presumption that the valuation was fraudulent or does not represent a fair and conscientious effort on the part of the Board to arrive at the fair cash market value. *Richardson v. Kent*, 47 S.W.2d 420 (Tex.Civ.App.—Dallas 1932, no writ); *Lubbock Hotel Co. v. Lubbock Independent School Dist.*, 85 S.W.2d 776 (Tex.Civ.App.—Amarillo 1935, no writ).

A reasonable discrepancy between the true value of the property and the value at which it is assessed for taxes is permissible to cover a difference in opinion or judgment. *Dallas County v. Dallas Nat. Bank*, 179 S.W.2d 288 (Tex.1944); *Darby v. Borger Independent School District*, 386 S.W.2d 572 (Tex.Civ.App.— Amarillo 1965, writ ref'd n.r.e.).

The *Pierce* court further noted that:

It is the settled law in this state that a Board of Equalization, being a quasijudicial and not a judicial body, is not bound by the ordinary rules of evidence, but that it is allowed a broad latitude in determining the value at which property is to be assessed for taxing purposes and that in determining these valuations, it may take into consideration any fact or circumstance which tends to show such

value. The members of the Board may consider their own experiences and knowledge of the particular property and of values generally. *Exporters & Traders Compress & Warehouse Co. v. City of Marlin*, 130 S.W.2d 860 (Tex.Civ.App. —Waco 1939, dism.judg.cor.); *Lamar County Electric Cooperative Ass'n v. Red River County*, 170 S.W.2d 579 (Tex. Civ.App.—Galveston 1943, no writ).

The *Pierce* court further states,

[T]he mere fact that appellants' taxes were based upon an assessed value in excess of the market value would not, in our opinion, show substantial injury. In order to show that substantial injury resulted from the arbitrary plan or scheme, appellants would have the burden of making at least a reasonable showing that if all other property in the City had been assessed at market value, appellants' taxes would have not only been less, but substantially less. In other words, the taxpayer has the burden of showing in dollars and cents that he is not only worse off, but substantially worse off as a result of the plan. *City of Orange, Texas v. Levingston Shipbuilding Co.*, (5th Cir.) 258 F.2d 240 (1958).

As evidenced by *Pierce,* appellant in this case assumed a heavy burden in its attempt to set aside the Board's valuation of Coastal's crude oil inventory for ad valorem tax purposes.

Determining whether the ad valorem tax valuations in this case were erroneous and resulted in substantial injury to appellant turns on the interpretation and subsequent significance to be allotted the Federal Energy Guidelines Rule 212.183(b). According to this pricing rule for crude oil:

[A] refiner, in sales not made by a reselling business operated by the refiner, shall determine prices in sales of crude oil in accordance with the refiner's consistent and historical accounting practice, *provided that* the price charged in any sale of crude oil subject to this subpart shall not exceed the *price paid* by the refiner for the crude oil plus any transportation cost incurred by the refiner to transport the crude oil from the point at which the refiner takes title to the crude oil to the point of sale. (Emphasis added.).

This particular pricing rule went into effect in late 1977 and was removed January 27, 1981, so it was in effect at both valuation dates in question. This rule applies only to crude oil valuations.

There is some question whether appellant's crude oil could have sold for more than the "LIFO" values recorded on Coastal's books. A closer reading of the "pricing rule" reveals that appellant's is not the only pricing method available in keeping under the rule. We agree that a refiner is to determine crude sales prices in keeping with its "consistent and historical accounting practice," *but* this clause is effective *provided that* the price charged does not exceed the *price paid* for the oil plus transportation costs incurred.

Appellant's primary witness, Dan Daly, testified that the average cost per barrel of the total amount of crude oil on January 1, 1980, was $30.08, and the average cost per barrel of crude oil on January 1, 1981, was $29.6234 per barrel. This cost figure was used for management purposes and was the price *paid* by the refiner. Daly also testified that book cost per barrel of crude was $15.635 on January 1, 1980, and was $15.65 a barrel on January 1, 1981. According to Daly, the book cost is a financial number used for accounting purposes in financial reports, but the work copies show the *actual* cost.

Appellees contend that under the Federal Regulation, Coastal States could have sold its crude oil for any sum up to $30.08 in 1980, and $29.62 per barrel in 1981, and therefore, appellees' valuations of $21.00 and $28.00 per barrel were reasonable for ad valorem tax purposes.

■ We agree that book value is not necessarily the true market value of appellant's inventory, nor, as noted in *Polk County*, is market value necessarily book value.

We reject appellant's assertion that *Charles Schreiner Bank v. Kerrville ISD.*, 683 S.W.2d 466 (Tex.App.—San Antonio 1984, no writ) is on point. There the tax was on exempt property, here, there is no contention the crude oil was exempt. Significantly, appellant admits that the market value definition given the jury required a consideration of the governmental regulation. Appellant equates *the consideration* of the guideline with *a court and jury's obligation* to find the market value as per appellant's interpretation of the guideline; i.e., book value.

■ We disagree with appellees regarding the applicability of the Federal Pricing Rules to appellant. Although appellant was not in the business of selling crude oil, nor is there any evidence in the record that it had ever sold or planned to sell any crude oil, the regulation would still control the price the refinery would be able to charge if it should ever sell crude oil during the effectiveness of the Regulation. We agree with appellee, however, to the extent that the regulation does not apply specifically to "market value" of the crude oil inventory, but applies to *price paid* for the crude oil. In light of this distinction, the "pricing rule" would not, therefore, affect the ad valorem fair market valuations in question.

The regulation's applicability to appellant as contended by appellant strays from the main question in this case in several ways:

(1) As noted above, the "book value" does not necessarily fall under the regulation, but "price paid" does;

(2) Taxing according to market value does not force Coastal States to violate the federal regulations;

(3) In determining market value for ad valorem tax purposes, all relevant figures are taken into account; i.e., the federal regulations are examined as *a factor* in light of all the evidence used to determine market value, but is not dis-

positive as a matter of law in deciding market value;

(4) Appellant offered no controverting evidence of market value, sales prices or comparable sales to refute appellees' valuations;

(5) Since there is no record of crude oil sales by appellant during the effectiveness of the Pricing Rule, and since the rule is no longer in effect, there is no possibility of future harm and appellant's complaint therefore reveals at best only a speculative injury which is no grounds for reversal.

■ Appellant has not shown this Court that the taxes assessed by the Equalization Board and upheld by the trial court would definitely cause or did cause a substantial injury. *State v. Federal Land Bank of Houston*, 160 Tex. 282, 329 S.W.2d 847 (Tex.1959). At most, book value is recognized as only an indication or approximation of true value. *See Stanley v. Board of Supervisors*, 121 U.S. 535, 548–549, 7 S.Ct. 1234, 1238, 30 L.Ed. 1000 (1887). Book value is not a proper measure of taxable value when the evidence shows that it differs from market value. *Polk County* at 923; *American Bank and Trust Co. v. Dallas County*, 679 S.W.2d 566, 570 (Tex.App.—Dallas 1984, no writ). Furthermore, when suit is brought to collect taxes, the fact that the taxing authorities have arbitrarily disregarded the true and legal basis of arriving at assessed valuation, does not, of itself, entitle a litigating taxpayer to relief. He must establish the actual market value of his property in order to show that the arbitrary or unlawful plan or scheme of arriving at assessed valuation resulted in substantial injury to him. *Whelan v. State*, 282 S.W.2d 378, 380–81 (Tex.1955).

Given the definition of "market value" included in the charge to the jury,[3] it is

---

**3.** The trial court's charge defined "market value" as: The price at which a property would transfer for cash or its equivalent under prevailing market conditions if (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser; (B) both the seller

and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and (C) both the seller and purchaser seek to maximize their

reasonable that the jury did not equate average book value on a LIFO basis with actual price paid or that it concluded appellant would not sell its oil at a $15.65 loss (approximately one-half of price paid for the crude oil), knowing "all the uses and purposes to which the property is adapted," and where Coastal "seeks to maximize their gains."

 In light of all the testimony, documents, and exhibits reviewed in this case, Coastal States did not fulfill its burden:

(1) to show the taxing scheme as made by the appellees was abritrary and fundamentally erroneous;

(2) to prove the Board of Equalization's values, found by the trial court to reflect fair market value, was grossly excessive;

(3) to show Coastal States suffered substantial injury thereby;

(4) to prove the market value of its properties as compared to other similar properties within appellees' taxing district and their respective tax liabilities. *Houston Lighting & Power Co. v. Dickinson Independent School District*, 641 S.W.2d 302, 310 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

As previously noted, unless such proof be made, a reviewing court will not overturn an assessment by a board of equalization. *Fayetteville v. Crowley*, 528 S.W.2d 344, 347. The market value of appellant's crude oil was not its book value as a matter of law. The assessment by the Board was not, as a matter of law, so excessive or discriminatory as to warrant setting aside that assessment. No substantial injury was shown as a matter of law. The evidence is factually sufficient to support the jury's answers to the special issue submitted them. The failure of the jury to find affirmative answers to Special Issues 1, 2, 5 and 6 is not against the great weight and preponderance of the evidence so as to be manifestly unjust. The findings of the jury as to market value for 1980 and 1981 (Special Issues 3 and 4) are not against the great weight and preponderance of the evidence so as to be manifestly unjust. Ac-

cordingly, we overrule appellant's points of error one through fourteen, and affirm the judgment of the trial court.

gains and neither is in a position to take advan-     tage of the exigencies of the other.