## MISSISSIPPI VALLEY LIFE INS. CO. et al. v. CITY OF EL PASO.

### No. 3813.

Court of Civil Appeals of Texas. El Paso.
June 1, 1939.

Rehearing Denied June 29, 1939.

D. J. Smith and Fred C. Knollenberg, both of El Paso, for appellants.

Frank B. Clayton, City Atty., Ernest Guinn, former City Atty., and Coyne Milstead and Leo Jaffe, Asst. City Attys., all of El Paso, for appellee.

NEALON, Chief Justice.

The City of El Paso, Texas, a municipal corporation, obtained judgment foreclosing a tax lien against Lots 11 and 12 and the north 18 feet of Lot 13, of Block 201, of the Campbell Addition to the City of El Paso, Texas. The amount of the judgment, after remittitur of 1937 taxes, was $2203.16. This included taxes, penalties and interest for the years 1932, 1933, 1934, 1935 and 1936.

The City of El Paso was incorporated by virtue of an Act of the Legislature approved February 25, 1907, Loc. & Sp. Acts c. 5, which was declared to be a public act requiring judicial notice by the courts. No question is made as to the validity of the ordinance or the purposes for which the taxes in question were assessed. The sole challenge is as to the method of arriving at values, appellants John T. Watson, Liquidating Receiver for the Mississippi Valley Life Insurance Company, and George M. Biel, Insurance Commissioner of the State of New Mexico, having appealed from the judgment, and having charged that the valuations placed upon the properties during the various years involved were excessive, and that an unlawful method was used in arriving at the amounts.

The case was tried to the court and findings of fact and conclusions of law were, upon request of appellants, filed.

The valuations placed upon the property by the taxing authorities of the City of El Paso for the various years are shown in the following table:

| | |
|---|---|
| 1932 | $16,200 |
| 1933 | 16,200 |
| 1934 | 13,500 |
| 1935 | 13,500 |
| 1936 | 11,330 |

Appellants insist that the plan adopted by the City Collector and Assessor and the Board of Equalization for the assessment of property was wrong in principle and in method, in that it disregarded the rental value of the property. They insist that during those years the value of the property was between $5000 and $7000, and at no time was it greater than the last named amount.

During the years 1932, 1933 and 1934 the property in question was owned by Yandell Realty Company. December 4, 1934, it was bought at foreclosure sale by the Insurance Commissioner of the State of New Mexico.

In 1932 Yandell Realty Company, acting through Richard F. Burges, rendered the property for taxation at a value of $18,000. This valuation was reduced by the Board of Equalization to $16,200. In 1933 the property was unrendered and the Assessor and the Board of Equalization fixed the value of the property at $16,200. In 1934 M. E. DeBord, acting as agent of the Yandell Realty Company, rendered the property at $13,500, and taxes were assessed at that value. DeBord was connected with the Orndorff Realty Company, which was the rental agent for the property, and the Court found that he had implied authority to make the rendition. Yandell Realty Company never complained of any of said valuations.

For the year 1935 the property was rendered by Fred C. Knollenberg, acting for the Insurance Commissioner of New Mexico, at a value of $7500. The valuation was raised by the Board of Equalization to $13,500. Notice was given the owner, but no appearance was made and no appeal from this action filed before or made to the Board of Equalization.

In 1936 a valuation of $11,330 was fixed by the Assessor and the Board of Equalization. This valuation was not protested by the owner at the time, and no one appeared before the Board of Equalization to contest that body's action.

While the suit as originally filed included taxes for the year 1937, the representatives of the City acceded to the demands of the owner, and it was agreed that this item should be eliminated from the judgment.

The taxes sued for have not been paid and the owner has not tendered payment of any definite sum of money.

Among other facts, it was found by the Court that from 1934 up until 1938 the property was in bad repair; that during most of the time it was vacant and that when rented the largest amount of rent received was $17.50 per month; that from 1934 up to and including 1937 it was offered upon the market at from $5000 to $6000, with an obligation upon the seller to pay the taxes and broker's commission, and that it was finally sold in 1938 for

$4850; that the assessed value fixed by the City was more than the reasonable cash market value of the property; that in 1938 application was made to the City Council to have the valuation adjusted to conform to the reasonable cash market value, and the application was rejected; that defendants are willing to pay delinquent taxes in an amount adjusted to what they consider the reasonable cash market value of the property.

As to the methods by which the taxing authorities arrived at a valuation, the Court said in its seventeenth, eighteenth and nineteenth findings:

"17. That the valuation fixed by the City Tax Assessor and Board of Equalization for the years 1932 up to and including 1937, was not based on the reasonable cash market value of said property.

"18. The Court finds the reasonable cash market value of said property, for the years 1932 to and including 1937, to be $8000.00.

"19. That the valuation and assessment fixed by the Board of Equalization and taxing authorities of the City of El Paso was based on an erroneous figure as to the value of the property, inasmuch as the condition of the building was not taken into consideration by the assessing and taxing authorities of the City."

### Opinion

From the foregoing statement it appears that upon this appeal the assessments for five years are under attack. We will treat of them separately.

■ For the year 1932 the Yandell Realty Company, acting through Richard F. Burges, whose authority to act has not been questioned in the evidence, rendered the property for taxation at a value in excess of the amount fixed by the Board of Equalization as its value. The assessment for that year need be no longer considered.

■ In 1934 M. E. DeBord, purporting to act as agent of Yandell Realty Company, rendered the property at $13,500, and taxes were assessed upon that valuation. The authority of DeBord to act as agent in the matter is challenged in this cause by appellants. The court found that he had implied authority. We think the evidence is sufficient to warrant such a finding, or at least sufficient to show an agency by estoppel. It does not appear that any other person appeared before the

taxing authorities to render the property or to complain of valuations for 1934. The authority of DeBord has not been questioned by the principal for whom he acted. At the time he made the rendition he worked for the Orndorff Realty Company, which, according to Mr. DeBord, was the owner's agent "to handle the property," and it was customary to make rendition of all properties on which that Company was handling the accounts. They performed the duty for their principals of seeing that all properties handled by them were placed upon the tax records for taxable purposes. DeBord did not remember that he had definite instructions to make the rendition. The owner never objected to DeBord's action in rendering the property. It was customary in El Paso for real estate agents to make renditions so that property in their charge would not go upon the unrendered rolls. The Insurance Commissioner of New Mexico bought the property several months after the rendition was made and after the "rendered rolls" had been closed. The assignment challenging the finding of the Court in this respect is overruled, as are the attacks of appellants upon the 1934 valuation.

As said in our preliminary statement, the valuations fixed for the years 1935 and 1936 were not protested before the Board of Equalization, though for the year 1935 the property was rendered by Mr. Knollenberg, acting for the Insurance Commissioner of New Mexico, the valuation was raised by the Board of Equalization and notice was given the owner. It is thus seen that at no time did the owners of the property appeal to the Board of Equalization and protest the valuations fixed for the years in question.

■ As we construe the findings of the Court they are to the effect that the City taxing authorities and the Board of Equalization placed too high a value upon the property for the years beginning with 1932 up to and including 1937, but that this was the result of mistaken judgment. It is not found, nor is there evidence to warrant a finding, that any fraudulent practice was resorted to or any discrimination practiced, or any unlawful method adopted. The effect of the finding is that, though following lawful methods, the tax assessor and the Board erred in their finding as to the fact involved. What we have before us is a difference of opinion be-

tween the trial Court upon the one hand, and the taxing authorities upon the other. There is nothing in the record or in the findings to indicate that the assessment was void. In such a state of the record the decision of the taxing board is not subject to collateral attack. The principle is well stated by the Waco Court of Civil Appeals in Simkins v. City of Corsicana, 86 S.W.2d 792, 793, in this language: "It is well settled that the decisions of tax boards in matters of valuation are quasi judicial in their nature, and therefore they are not subject to collateral attack, in the absence of fraud or other obvious violations of law. No mere discrepancy between the true value of the property and the amount at which it is assessed will warrant a court in setting aside a valuation fixed by the board where such valuation is the result of the honest judgment of the board in the application of lawful principles." That holding is in harmony with the principles stated by the Commission of Appeals in Druesdow v. Baker, 229 S.W. 493, 495, in the following language: "The decisions of the Tax Board in the matter of valuations are quasi judicial in their nature. This action is therefore a collateral attack upon the judgment of a quasi judicial tribunal. Such an attack cannot be justified in the absence of fraud, or something equivalent thereto; lack of jurisdiction; an obvious violation of the law, or the adoption of a fundamentally wrong principle or method, the application of which substantially injures complainant. No mere difference of opinion, as to the reasonableness of its valuation, when such valuations, though deemed erroneous, are the result of honest judgment, will warrant interference by the courts. Pittsburgh, C., C. & St. L. R. Co. v. Backus, 154 U.S. [421] 434, 14 S.Ct. 1114, 38 L.Ed. [1031] 1039; Western Union Telegraph Co. v. Taggart, 163 U.S. [1] 30, 16 S.Ct. 1054, 41 L.Ed. 49."

This is not the first time that this question has been before this Court and the duty of the taxpayer stated in view of the provisions of the El Paso City Charter. The provisions of the Charter are stated at some length in Stevens v. City of El Paso, Tex.Civ.App., 81 S.W.2d 149, writ of error dismissed. Section 137 of the Charter makes it the duty of the property owner to render to the Collector of Taxes a full and complete inventory of all property owned or held by the taxpayer and to make oath to the correctness of the inventory. It further provides that the property shall be rendered and listed in the manner prescribed by the general laws of the State in regard to general taxation when applicable, unless provision is otherwise specifically made therefor in the Charter. Section 138 provides that when the owner fails or refuses to inventory and assess his property, the same shall be inventoried, assessed and rendered by the assessor and collector of taxes, or some other officer designated by the City Council. Section 146 provides that the Mayor and Aldermen shall constitute a Board of Equalization, and by Section 147 it is provided that the Board of Equalization shall convene annually at a time fixed by the City Council to receive all the assessment lists or books of the assessor for examination, correction, equalization, appraisement and approval. By Section 148 it is made the duty of the Board of Equalization to cause the assessor to bring before it the assessment lists or books of the assessor for its examination that it may see that each and every person has rendered his property at a fair market value, with the duty upon the Board also to ascertain the value of the property and lower it if it is too high or raise it if it is too low. Section 149 prescribes somewhat in detail the manner by which the Board shall equalize values and provides that any person may file with the Board at any time before final action a complaint as to the assessment of his or any other person's property; that the Board shall hear the complaint and the complainant shall have the right to summon witnesses. Section 151 provides that where the Board finds it to be his duty to raise the values of any property, it shall adjourn to a day not less than ten nor more than thirty days from the day of adjournment, such day to be fixed in the order of adjournment, and cause the Secretary of the Board to give written notice to the owner of the property or to the person rendering the same of the time to which the Board may have adjourned, and provides that the owner may appear and show cause why the value of the property shall not be raised. Section 153 provides that after the Board has finally examined and equalized the value of all property on the assessor's lists or books, it shall approve the lists or books and return them, together with the lists mentioned in Section 150 of the Charter, that the assessor may make up therefrom his general rolls as required by

law. When the general rolls are made up the Board then has the duty of examining them and approving them if found correct. Section 154 provides that the action of the Board at the meeting provided for in Section 153 of the Charter shall be final, and shall not be subject to revision by the Board of any tribunal thereafter.

Appellants and those under whom they hold failed to avail themselves of the opportunities offered by law of protesting the valuations fixed upon their property. They allowed the City taxing authorities to proceed to the making up of the rolls without resorting to the remedy provided by law. Now, after the lapse of several years, during which time the affairs of the City have been conducted upon the presumption that finality has attached to the acts of the Board of Equalization and expenditures have been made in such reliance, appellants ask that they be relieved from the result of their own inaction. It is not within the power of the courts to afford relief in such cases.

The judgment of the District Court is affirmed.