**TEXAS STATE BOARD OF PHARMACY et al., Appellants,**

**v.**

**GIBSON'S DISCOUNT CENTER, INC., et al., Appellees.**

**No. 12330.**

Court of Civil Appeals of Texas, Austin.

Sept. 29, 1976.

Rehearing Denied Oct. 20, 1976.

---

John L. Hill, Atty. Gen. of Texas, John C. Madison, III, Asst. Atty. Gen., Austin, for appellants.

Bardwell D. Odum, Dallas, for Gibson.

Mary Joe Carroll, Clark, Thomas, Winters & Shapiro, Austin, for Sage International.

SHANNON, Justice.

By direction of the Supreme Court we review the merits of this appeal. The previous opinions of this Court and that of the Supreme Court appear at 530 S.W.2d 332 (1975), and 539 S.W.2d 141 (1976).

This appeal stems from a permanent injunction entered by the district court of Travis County enjoining Texas State Board of Pharmacy and others, from enforcing Tex.Rev.Civ.Stat.Ann. art. 4542a, § 20A, subdivisions II(a) and II(d) (1973). Appellees are H. R. Gibson, Sr., Gibson's Discount Center, Inc., and other corporations.

Appellees filed a declaratory judgment action seeking a declaration that art. 4542a, § 20A, subdivisions II(a) and II(d) is in violation of Tex.Const. art. I, § 19. After trial before the court, judgment was entered declaring, among other things, that the statute's prohibitions and restrictions concerning the advertising of prescription drugs deprived appellees of property "without due course of the law of the land" in violation of Tex.Const. art. I, § 19. We will affirm that judgment.

■ Upon request, the court filed findings of fact and conclusions of law which appellants did not challenge. As a result, appellants are bound by those findings of fact. *Cortez v. Cortez*, 457 S.W.2d 131 (Tex.Civ.App.1970, no writ); *Kroger Company v. Warren*, 420 S.W.2d 218 (Tex.Civ. App.1967, no writ).

Appellants' most significant contention is that the district court erred in holding that § 20A, subdivisions II(a) and II(d) was in violation of Tex.Const. art. I, § 19.

Section 19 provides that "no citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Texas Rev.Civ.Stat.Ann. art. 4542a, § 20A, subdivisions II(a), II(b), and II(d) (1973) provide as follows:

"II. Policy. (a) It is the policy of this state to permit and encourage, for the benefit of the citizens of this state, the availability of factual information regarding charges by licensed pharmacists or pharmacies for prescription drugs and the professional services and nonprofessional convenience services associated with the dispensing of such drugs. It is the stated purpose of this Section, when read in conjunction with Section 17(d)(3) to permit and encourage the availability of such factual information in a manner which will not encourage unfair or deceptive competitive practices but will assist the public in making informed purchasing decisions based on total value received for prescription drug expenditures and not based on price alone. It is also the policy of this state, recognizing that prescription drugs are designated as such by law because they are potent medications not safe for use except when medically necessary and then only under close professional supervision and control, that information permitted and encouraged by this Section when read in conjunction with Section 17(d)(3), shall be provided the public only in a manner which will not serve to create artificial demand for prescription drugs; and it is likewise intended that the provisions of this Section be the exclusive method by which price information shall be available to the general public.

"(b) A licensed pharmacy shall have available to the public at the prescription department or other dispensing area in complete public view, in a standard format authorized by rule or regulation of the Texas State Board of Pharmacy, a poster containing the one hundred (100) most prescribed drugs in Texas and the maximum charges to the public for prescription drugs, including charges for professional services and nonprofessional convenience services specified by rule or regulation of the Texas State Board of Pharmacy which the pharmacy includes and does not include within the posted maximum charge.

.    .    .    .    .

"(d) No notice or advertising to the general public shall contain promotional claims or statements comparing, either directly or indirectly, the charges either listed or otherwise charged for specific prescription drugs or prescription drugs generally, with the charges either listed or otherwise charged for specific prescription drugs generally by any other pharmacist or pharmacy; and provided, further, that no such notice shall contain any claims or statements comparing, either directly or indirectly, the professional services or nonprofessional convenience services provided the public by any other pharmacist or pharmacy; nor shall any pharmacy publish or display or cause or permit to be published or displayed in any newspaper or by radio, television, window display, poster, sign, billboard or any other means or media any statement or advertising concerning prescription medication which is fraudulent, deceitful or misleading, including statements or advertisements of bait, discounts, premiums, price, gifts or any statement or advertisements of a similar nature, import or meaning, or any statement or advertisement of or reference to the price of prescription medication except in compliance with this Act."

Appellants argue that the above provisions are not in violation of § 19, but instead, are a reasonable exercise of the State's police power. In that respect we recognize that the police power is broad and comprehensive, and is grounded upon public necessity which alone can justify its exercise. Such exercise hinges upon the public need for safety, health, security, and protection of the general welfare of the community. *City of Coleman v. Rhone*, 222 S.W.2d 646 (Tex.Civ.App.1949, writ ref'd). If, however, a statute purporting to have been enacted to protect the public morals or safety, bears no substantial relation to those objects, the statute must, of necessity, yield to the Constitution.

For the following reasons we are of the opinion that § 20A, subdivisions II(a) and II(d), bears no reasonable relation to the safety, health, security, and protection of the general welfare of the citizens of this State.

Subdivision II(a) enumerates several salutary purposes said to be served by subdivisions II(b) and II(d). In their presentation to this Court appellants did not choose to urge those purposes in defense of the statute; nevertheless, the proper resolution of the appeal necessitates their consideration. First, the statute claims to promote the availability of factual information regarding charges for prescription drugs. Such a result is supposed to be achieved by subdivision II(b). That subdivision requires posting in each pharmacy a list of the prices of one hundred most commonly prescribed drugs. However, all other price advertising is specifically prohibited by subdivision II(d). Contrary to promoting the availability of factual information regarding prices for prescription drugs, we believe subdivision II(d) inhibits the free flow of price information.

The second stated purpose of the prohibition against advertising is to prevent "unfair or deceptive competitive practices" such as price baiting and similar activities. It occurs to us that Tex.Bus. and Comm. Code Ann. § 17.41 *et seq*, the "Deceptive Trade Practices-Consumer Protection Act," more effectively controls false, misleading, or deceptive trade practices than does a blanket prohibition against *all* advertising of drugs.

Another purpose said to be served by the statute is the prevention of an artificial demand for prescription drugs. We disagree. In the first place, the district court found that the evidence would not support a finding that advertising would create such artificial demand. In the second place, this purpose is premised on the notion that the advertisement of prescription drugs subjects physicians to pressures which will force them to prescribe drugs on the basis of patient demand without regard to the patients' physical well-being. This concept overlooks the professional and ethical integrity of the medical pro-

fession in prescribing drugs for patients. *Stadnik v. Shell's City, Inc.*, 140 So.2d 871 (Fla.1962). Further, the district court found that the evidence would not support a finding that advertising would cause patients to influence physicians to overprescribe drugs.

In support of their contention that § 20A, subdivisions II(a) and II(d) protects the public health, safety or morals, appellants advance the following considerations:

"1. That a pharmacist is much more than a mere merchant—he is a highly skilled professional . . . as much as is a dental surgeon, attorney or certified public accountant;

"2. That the pharmacist handles extremely potent and often toxic drugs . . . different from a grocer or used car salesman;

"3. That the pharmacist is heavily relied upon by other members of the health-care family and by patients . . .

"4. That the unregulated advertising would stop the pharmacist from performing tasks such as those mentioned above and *diminish the quality of patient care* . . ."

With respect to appellants' first and second considerations, we observe that the statute is more concerned about retail sales by the pharmacist than it is about his professional standards. Subdivisions II(a) and II(d), do not directly affect professional standards one way or another.

Further, appellants do not directly attack the court's finding that "pharmacy is a profession, but the dispensing of prescription drugs is primarily a retail activity." The court found also that less than ten per cent of prescription drugs are compounded by retail pharmacists. We think, it is a fair conclusion that the dispensing of prescription drugs has become more of a retail endeavor than a service endeavor. *Maryland Board of Pharmacy v. Sav-A-Lot, Inc.*, 270 Md. 103, 311 A.2d 242 (1973). With respect to this point, Justice Burger wrote in a concurring opinion in *Virginia State*

*Board of Pharmacy et al. v. Virginia Citizens Consumer Council et al.*, —— U.S. ——, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976):

"The Court notes that roughly 95% of all prescriptions are filled with dosage units already prepared by the manufacturer and sold to the pharmacy in that form. These are the drugs that have a market large enough to make their preparation profitable to the manufacturer; for the same reason, they are the drugs that it is profitable for the pharmacist to advertise. In dispensing *these* items, the pharmacist performs three tasks: he finds the correct bottle; he counts out the correct number of tablets or measures the right amount of liquid; and he accurately transfers the doctor's dosage instructions to the container. Without minimizing the potential consequences of error in performing these tasks or the importance of the other tasks a professional pharmacist performs, it is clear that in this regard he no more renders a true professional service than does a clerk who sells lawbooks."

We recognize that Texas has a substantial interest in the maintenance of a high degree of professionalism on the part of licensed pharmacists. Those high professional standards are protected in large part by the regulations to which pharmacists in Texas are subject. Surely, any pharmacist guilty of professional dereliction that endangers his customer will promptly lose his license. *Virginia State Board of Pharmacy et al. v. Virginia Citizens Consumer Council, Inc. et al., supra*. We conclude that the interest of the State in the professionalism of pharmacists is not greatly served by legislation which keeps the public ignorant of prescription drug prices.

Appellants' third and fourth considerations are that the pharmacist is heavily relied upon by other members of the health-care family and by patients, and that unregulated advertising would "diminish the quality of patient care." In argument supporting those considerations, appellants say that advertising would tend to disperse drug customers to various pharmacies and

thereby weaken the pharmacist's ability to "monitor" drug prescriptions. "Monitoring" refers to the practice by some pharmacists of watching the prescriptions of a regular customer for the purpose of possibly detecting the prescription of a drug which would be antagonistic to other drugs which the customer is taking.

In this regard the uncontroverted finding of fact of the district court was that the evidence would not support a finding that advertising has caused, or in the future would cause, customers to have prescriptions filled at different pharmacies and thereby frustrate monitoring attempts. The court further found that appellants failed to show that most pharmacies engaged in "monitoring." In addition, it is the physician's duty to be certain that he is not prescribing drugs antagonistic to those already being taken by his patient.

In conclusion, it seems to us that if the legislature was in fact concerned about the prescription of antagonistic drugs, the legislature would have chosen a more direct method of regulation than prohibiting the advertisement of prescription drug prices. *Pennsylvania State Board of Pharmacy v. Pastor*, 441 Pa. 186, 272 A.2d 487 (1971).

The judgment is affirmed.

Affirmed.