CITY OF CORPUS CHRISTI, Corpus Christi Independent School District, and Corpus Christi Junior College District, Appellants,

v.

Jack DAVIS, Appellee.

No. 1347.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 19, 1978.

Granted in Part and Overruled in Part Nov. 29, 1978.

Felix Hal George, Jr., Asst. City Atty., Corpus Christi, for appellants.

Charles W. Cromwell, Wade & Cromwell, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit for delinquent taxes brought by the City of Corpus Christi, Corpus Christi Independent School District, and Corpus Christi Junior College District against defendant, appellee, Jack Davis, seeking delinquent taxes and penalties in the amount of $35,959.68 on real estate described as Block B, Brooklyn Addition and for $1,973.33 for the improvements thereon for the taxable years of 1973 through 1976 and for foreclosure of its tax lien. The trial court, sitting without a jury, entered a judgment awarding the taxing authorities the amount requested on the improvements, $25,866.33 in delinquent tax-

es and penalties on the real estate, and foreclosure. The taxing authorities (appellants) appeal, seeking an additional $10,092.85 in delinquent taxes and penalties not awarded by the trial court.

The tract of land in question, Block B of the Brooklyn Addition, comprises approximately 10 acres of land on Corpus Christi Bay in the North Beach area of Corpus Christi, Nueces County, Texas. This land has been used by appellee Davis as a trailer park. Block B is the remaining portion of an original 17.95 acre tract of land which Davis purchased in 1956 and which he replatted into Block A and Block B. In 1961, Davis sold Block A. After this sale, Davis described the remainder of the original tract as "Block B, Brooklyn Replat" and "4.7 acres of submerged land." These latter two tracts were separately assessed for taxes but were included under one tax account bearing the number 1180–30–10. At all material times, the property was assessed at 60% of the market value. From 1962 through 1973, the taxing authorities carried the "submerged land" on the tax roll at an assessed value of $400.00. Davis paid taxes on Block B and the "submerged land" through the year 1972. In 1973, the appellants proposed an increase in the valuation of Block B to $3.00 per square foot with no change in the "submerged land." Davis was notified of this proposal and appeared before the Board of Equalization. After a hearing, Davis and the taxing authorities entered a compromise agreement, and as a result, the Board lowered the proposed assessment of Block B to $.85 per square foot. Block B was then assigned an assessed value of $210,150.00 while the assessed value of the "submerged land" remained the same ($400.00), resulting in a total assessed value of $210,555.00. In 1974, Davis rendered his property for the same total assessed value of $210,555.00, but in doing so, he rendered Block B at a lower value of $150,555.00 and rendered the "submerged land" at an increased value of $60,000.00.

Davis failed to pay the taxes on the subject property for the years 1973, 1974, 1975 and 1976. Appellants filed suit to recover the delinquent taxes on Block B and the "submerged land" for these years. Prior to trial, appellants amended their petition to exclude any recovery for delinquent taxes on the "4.7 acres of submerged land"[1] and to reduce Davis' alleged delinquent tax liability in proportion to the $400.00 assessed value appellants ascribed to the submerged land. Davis resisted the suit as amended on the grounds that he had previously rendered the 4.7 acres at an assessed value of $60,000.00 and that the appellants, when they excluded this portion of the land, failed to reduce the taxes in proportion to the assessed value of $60,000.00 for the years in question.

At trial, appellants introduced certified copies of their delinquent tax roll records covering the delinquent accounts. The trial court entered judgment allowing recovery of delinquent taxes on the improvements as sought by the appellants and for delinquent taxes on Block B for the years in question based on appellees' valuation of $150,555.00. The trial court also granted a judgment of foreclosure.

Findings of fact and conclusions of law were filed which, in relevant part, are in essence as follows: 1) Davis paid all taxes as assessed by the plaintiffs on account number 1180–30–10 until 1973; 2) in 1973 the taxing authorities proposed to the Board of Equalization to raise the valuation of Davis' account and properly notified Davis; 3) in 1973 Davis appeared before the Board of Equalization and the property under the account in question was valued at $350,925.00 market value and $210,555.00 assessed value; 4) in 1974 Davis rendered his property under this account for a total assessed valuation of $210,555.00 with $150,555.00 for Brooklyn Block B and $60,000.00 for 4.7 acres of submerged lands; 5) in 1974 the Board of Equalization accepted Davis' rendition and did not notify him of any increase over his rendition for this account;

---

1. The question of ownership of this "submerged land" is not before us. We do not express or intend to express any opinion of such ownership in this case.

6) Davis did not render his property for the years 1975 or 1976 but the Board placed the same valuation upon this property as he had rendered it in 1974; 7) the Board did not notify Davis of any proposed increase in the valuation on this account for the years 1974, 1975 and 1976; 8) the tax assessor-collector for the plaintiffs did not render to the Board for the years 1975 and 1976 any value different from Davis' rendition in 1974; 9) the Board placed a total assessed valuation on the account of $210,555.00 in 1973–1976; 10) the plaintiffs did not present any sworn or unsworn testimony to the Board for the years 1974 through 1976 that an assessed valuation for the 4.7 acres of submerged land of $60,000.00 was unreasonable or that the assessed valuation of $150,555.00 for Block B was unreasonable; 11) the plaintiffs, prior to trial, amended their pleadings to exclude from the account the 4.7 acres of submerged land but failed to reduce the taxes in proportion to its reasonable assessed valuation; 12) plaintiffs divided the assessment for this account by placing the total $210,155.00 on Block B, Brooklyn, and $400.00 on the 4.7 acres of submerged land without approval of the Board of Equalization. In accordance with these findings of fact, the trial court refused to enter judgment awarding the appellants the total taxes sought on Davis' land.

At the outset we must define the scope of our review in this case. We are required to "decide all issues presented . . . by proper assignments of error . . . whether such issues be of fact or of law . . . ." Rule 451, Texas Rules of Civil Procedure. The trial court filed numerous findings of fact as well as the supplemental findings of fact that were requested by the appellants. The only "finding of fact" challenged by the appellants on evidentiary grounds is actually one of the trial court's "conclusions of law," that $60,000.00 is a reasonable value of the submerged lands. The parties, as well as this Court, are bound by the *unchallenged* findings of the trial court. *Texas State Board of Pharmacy v. Gibson's Discount Center, Inc.,* 541 S.W.2d 884, 886 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.); *Smith v.*

*Hues,* 540 S.W.2d 485, 489 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.); *United States Fidelity & Guaranty Co. v. Borden Metals Products Co.,* 539 S.W.2d 170, 174 (Tex.Civ.App.—Beaumont 1976, writ ref'd n. r. e.); *Galvan v. Galvan,* 534 S.W.2d 398, 400–401 (Tex.Civ.App.—Austin 1976, writ dism'd); *Curtis v. National Cash Register Co.,* 429 S.W.2d 909 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.); *McKenzie v. Carte,* 385 S.W.2d 520 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.). See *Searcy v. Grant,* 90 Tex. 97, 37 S.W. 320, 322 (1896). In addition, omitted findings are deemed found in support of the judgment on appeal if they have support in the evidence. *Bednarz v. State,* 142 Tex. 138, 176 S.W.2d 562 (1943); Rule 299, Texas Rules of Civil Procedure.

When the appellants introduced into evidence certified copies of the City's delinquent tax records for the years 1973 through 1976, together with the testimony of their tax assessor-collector that, according to the records, such taxes were due, delinquent and unpaid, a prima facie case for the validity of the assessed valuations and the collection of such taxes was made. *Alamo Barge Lines, Inc. v. City of Houston,* 453 S.W.2d 132, 133–34 (Tex.Sup.1970); *Bass v. Aransas County Independent School Dist.,* 389 S.W.2d 165, 172–73 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); *Newton v. Highland Park Independent School Dist.,* 361 S.W.2d 916 (Tex.Civ.App.—Austin 1962, no writ). Once this initial burden is met by the plaintiff in a tax suit, as was done by the appellants here, the burden of going forward with evidence shifted to the defendant taxpayer. Thereafter, in order to prevail, the taxpayer must introduce competent evidence permitted by law to invalidate the assessments. *Alamo Barge Lines, Inc. v. City of Houston,* 453 S.W.2d 132, 134 (Tex.Sup.1970); *Bass v. Aransas County Independent School Dist.,* 389 S.W.2d 165, 173 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.).

Here, as noted above, Davis alleged that the appellants had failed to reduce his tax

burden in proportion to the rendered and approved valuation of the submerged lands the appellants excluded from their suit as amended. See Tex.Rev.Civ.Stat.Ann. art. 7329 (1960). Keeping in mind the limited scope of our review, we will consider appellants' points of error relating to each of the tax years in question.

In point of error number one, the appellants contend that the trial court erred in holding that appellants are bound in 1973 by Davis' 1974 rendition. The facts concerning the 1973 tax year are undisputed. The dispute between the parties under this point of error concerns the effect that Davis' 1974 rendition of his property should have on his tax liability for the 1973 taxable year. In 1973, the appellants proposed to change the assessment on Block B from a per acre basis to a square foot basis and proposed to increase the fair market value of Block B to $1,237,148.00, leaving the assessed value of the submerged land at $400.00. After receiving notification of this increase, Davis appeared before the Board of Equalization where an assessed value was assigned to Block B of $210,155.00 and the submerged at $400.00, resulting in a total assessed value of $210,555.00. Neither party attacks the validity of the action taken by the Board of Equalization in 1973. In 1974, Davis rendered his property and assigned an assessed value of $150,555.00 to Block B and a $60,000.00 assessed value to the submerged land for a total assessed value of $210,555.00. In the lower portion of the rendition form in parentheses appeared the notation "full market land value $350,925." Thus, Davis rendered an assessed value equal to the total assessed value the Board of Equalization ascribed to the land in 1973, but changed the valuation ascribed to each parcel.

Appellants, in support of their action for back taxes for the year of 1973, introduced into evidence a copy of the delinquent tax roll showing delinquent taxes of $9,799.27 due for 1973 on Block B based on its assessed valuation of $210,155.00. This assessed valuation conforms to the valuation ascribed by the Board of Equalization in 1973. The trial court entered judgment awarding the appellants the delinquent taxes for the year of 1973 on Block B which were computed upon an assessed value of $150,550.00, an amount equal to the value rendered by Davis in 1974. This was incorrect.

■■■ It is well settled that the assessment of property for tax purposes is a quasi-judicial function of the Board of Equalization and that no attack on the valuations fixed by such boards can or will be sustained in the absence of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. *Polk County v. Tenneco, Inc.*, 554 S.W.2d 918, on remand, 560 S.W.2d 416 (Tex.Civ.App.—Beaumont 1977, no writ); *City of Waco v. Conlee Seed Company*, 449 S.W.2d 29 (Tex.Sup.1969); *Bernhardt v. Port Arthur Ind. School Dist.*, 159 Tex. 488, 324 S.W.2d 163 (1959); *State v. Whittenburg*, 153 Tex. 205, 265 S.W.2d 569 (1954); *Zavala County v. E. D. K. Ranches, Inc.*, 544 S.W.2d 484 (Tex.Civ.App. —San Antonio 1976, no writ); *Stone v. City of Dallas*, 244 S.W.2d 937 (Tex.Civ.App.— Waco 1951, writ dism'd w. o. j.); *Mississippi Valley Life Ins. Co. v. City of El Paso*, 131 S.W.2d 191 (Tex.Civ.App.—El Paso 1939, no writ). Davis appeared before the Board of Equalization in 1973. He does not attack the action of the Board in so valuing his property. He is, therefore, bound by the Board's valuation of his property for the 1973 tax year. The trial court's finding of fact that the Board of Equalization accepted Davis' 1974 rendition will not support the trial court's judgment which awarded 1973 taxes on Block B based on the value Davis rendered in 1974. Appellants' point of error one is sustained.

■■■ Next we consider the 1974 tax year. In point of error number four, the appellants complain that the trial court erred in holding that the appellants are bound in 1974 by Davis' division and assignment of value in his 1974 rendition rather than being bound by the total rendered value. In support of their suit for delinquent taxes for the year 1974, appellants

introduced certified copies of the delinquent tax records and elicited testimony from the tax assessor-collector that these taxes for Block B were due, delinquent and unpaid. The parties stipulated the taxes were computed on an assessed valuation of $210,-150.00. Davis defended this prima facie case on the ground that he had rendered Block B at an assessed value of $150,555.00. In support of this defense Davis introduced into evidence a certified copy of two rendition forms which clearly set forth an assessed value of $150,555.00 based on a market value of $250,925.00 he assigned to Block B. This evidence rebutted plaintiffs' prima facie case.

▆▆▆▆ The City of Corpus Christi is a home rule city. Article 7 § 3 of the Corpus Christi City Charter requires every property owner to "render under oath to the tax assessor-collector . . . a full and complete inventory of all real and personal property so owned . . . rendered and listed in the manner prescribed by the general laws of the state when applicable, unless provision is otherwise specifically made therefor herein." The tax assessor-collector must accept the rendition made by the taxpayer whether the assessor agrees with the taxpayer's valuation or not. *Weinberg v. Molder,* 312 S.W.2d 393 (Tex.Civ.App.—Waco 1958, writ ref'd n. r. e.). The Corpus Christi City Charter specifically adopts the provisions of "Articles 1048 to 1056, both inclusive, Revised Statutes of Texas, 1925, except as otherwise provided herein." The Board of Equalization has the power and in fact it is its official duty to supervise the assessment of property and to increase or diminish the assessment and to affix a proper valuation thereto. Article 7 § 4, Corpus Christi City Charter; Tex.Rev.Civ. Stat.Ann. art. 1050 (1966). If the Board proposes to "raise the value of any property, it shall cause the tax assessor-collector to give the owner . . . notice . . stating the time and place . . . [to] appear and show cause why the value should not be raised." The Board must meet at the time and place named and hear all persons appearing concerning the value of whose property has been raised. Article VII, § 4a, Corpus Christi City Charter. See Tex.Rev.Civ.Stat.Ann. art. 1054. After the Board of Equalization has heard such persons who have appeared and examined and equalized the value of *all property on the tax assessor-collector's list, it shall approve the same.* Article 7 § 4(c), Corpus Christi City Charter. (Emphasis added). See Tex. Rev.Civ.Stat.Ann. art. 1050 (1966).

In this case, the trial court found, in effect, that the Board of Equalization accepted Davis' 1974 rendition assigning an assessed value of $150,155.00 for Brooklyn Block B and $60,000.00 for the submerged land. The trial court found the Board did not notify Davis of any proposed increase in Block B of his property so rendered. The trial court further found that appellants placed a value of $210,155.00 on Block B without approval of the Board of Equalization. The parties stipulated and the trial court so found that Davis did not receive notice from the Board of Equalization that the values he rendered were being challenged or that the Board was considering any increase in valuation on his account for the year 1974. Appellants have not attacked the trial court's findings on evidentiary grounds. These findings support the trial court's conclusion that Davis' 1974 tax liability on Block B must be calculated on an assessed value of $150,155.00 in accordance with the Board's approval of Davis' rendition. This precludes calculating Davis' 1974 tax liability on any other basis.

Appellants contend, nevertheless, that Davis is not entitled to rely upon the Board's approval of his valuation of Block B for the 1974 tax year. Appellants make some general argument to the effect that because Davis did not render Block B and the submerged land on two separate rendition forms, that Davis is bound by the total assessed value of Block B and the submerged land, and not Davis' separate valuation of the two parcels which the trial court found was accepted by the Board. Appellants apparently contend that in order for Davis to be entitled to have his property separately assessed, he should have clearly and separately rendered his property by

completing two separate and distinct rendition forms. We do not find appellants' argument to be persuasive.

First, appellants, in effect, are asking us to ignore virtually all of the unchallenged factual determinations made by the trial court. The general rule, as the appellants must recognize, is that a rendering taxpayer who separately renders and describes his property is entitled to have that property separately assessed. *Electra Independent School Dist. v. W. T. Waggoner Estate*, 140 Tex. 483, 168 S.W.2d 645 (1943). The applicability and operation of this general rule, however, turn upon factors other than the number of forms completed by the taxpayer. See *Electra Independent School Dist. v. W. T. Waggoner Estate*, 140 Tex. 483, 168 S.W.2d 645 (1943). Here, the taxing authorities and the taxpayer have treated the parcels in question as separate and distinct with 1) separate descriptions and 2) separate assessments. The ultimate aggregation of these separately assessed values on one form is not controlling. Appellants' point of error four is overruled.

In point of error two, the appellants complain that the trial court erred in holding that appellants are bound in 1975 and 1976 by Davis' 1974 rendition. The facts concerning the 1975 and 1976 tax years are not in dispute. Davis did not render his property in either 1975 or 1976. He was not notified by the Board of Equalization for those years that his assessment was being raised or changed. For the years 1975 and 1976, appellants' records assigned an assessed valuation of $210,155.00 on Block B and $400.00 on the submerged land. Appellants, in essence, contend that because the total assessed value of both blocks remained the same and Davis failed to render his property for these years, the tax assessor was authorized to render Block B at a greater value than that value at which Davis rendered it in 1974 without notice to Davis of the increase.

In support of its judgment awarding appellants delinquent taxes for the years 1975 and 1976 computed on an assessed value of $150,155.00 on Block B, the trial court found that the Board placed the same valuation on Davis' property in the years 1975 and in 1976 as the value Davis had rendered it in 1974. The trial court also found that the taxing agencies and the Board did not render Davis' property at any value different from Davis' rendition in 1974 for the years 1975 and 1976, but that the plaintiffs divided the assessment on Davis' property by placing a total of $210,155.00 valuation on Block B without the approval of the Board of Equalization. The appellants do not attack these findings on either legal or factual sufficiency grounds. These unchallenged findings alone are sufficient to sustain the trial court's judgment awarding delinquent taxes on Block B for the tax years of 1975 and 1976 based on a value of $150,155.00.

Article 7 § 3(b) of the Corpus Christi City Charter provides, in effect, that the tax assessor-collector shall assess and value all unrendered property and such "assessment shall be as valid and binding as if such property had been rendered by the owner thereof." This provision, however, does not permit the tax assessor-collector to bypass approval by the Board of Equalization under § 4 of the Charter. Section 4(c) requires the Board of Equalization to *examine* and *equalize* the *value of all property* on the tax assessor-collector's lists or books. After the Board of Equalization has examined and equalized the value of all property on the tax assessor-collector's lists or books, it shall approve the same and return them in the manner provided by law. Corpus Christi City Charter, art. VII, § 4(c).

The action of the Board in approving an assessment of real property constitutes a *valid assessment which cannot be subsequently changed or modified by another reassessment* for additional taxes in the absence of fraud or such illegality as to render the initial assessment void. See *Yamini v. Gentle*, 488 S.W.2d 839, 842 (Tex. Civ.App.—Dallas 1972, writ ref'd n. r. e.). *Polk County v. Tenneco, Inc.*, 554 S.W.2d 918, on remand 560 S.W.2d 416 (Tex.Civ. App.—Beaumont 1977, no writ); *State v. Whittenberg*, 153 Tex. 205, 265 S.W.2d 569

(1954). No such compelling circumstances are raised in the record before us. Appellants' point of error two is overruled.

In point of error three, appellants state that the trial court "erred in holding that $60,000.00 is a fair and reasonable assessed valuation for the 4.7 acres of submerged land for the years 1973, 1974, 1975 and 1976." This point of error is too general and multifarious to be considered on appeal. Even if we consider the arguments and authorities contained thereunder, we cannot ascertain with any reasonable certainty, the appellants' specific complaint. As we understand the gist of the argument, appellants appear to be attacking one of the trial court's conclusions of law on a legal sufficiency assignment of error. It is generally stated that the principal usefulness of conclusions of law is to inform the appellate court the theory on which the action was tried. If the controlling findings of facts will support a judgment on a correct legal theory, incorrect legal conclusions stated in the judgment will not require a reversal. See 4 McDonald's, Texas Civil Practice, §§ 16.06 at p. 14; 16.05–16.06 (1971).

This point of error must be overruled for the additional reason that the appellants are, in effect, attempting a collateral attack upon an assessed value approved by the Board of Equalization. Such attacks are not permitted absent compelling circumstances not present in this case. See *City of Waco v. Conlee Seed Company*, 449 S.W.2d 29, 30 (Tex.Sup.1969) and authorities cited therein.

This brings us to Davis' counterpoints No. 1 and 2 which generally complain that the trial court erred in: 1) "granting a judgment for taxes on Brooklyn, Improvements Only, Block B, an addition to the City of Corpus Christi" and 2) "by granting a judgment foreclosing a tax lien on Brooklyn, Improvements Only, Block B, an addition to the City of Corpus Christi." Actually, these "counterpoints" should have been labeled "cross-points". "Counterpoints" are, in essence, "reply points" as prescribed

in the first clause of Rule 420, Texas Rules of Civil Procedure. Their function is to show that the point or points of the opposite party are not valid. "Cross-points" are the means by which an appellee may bring forward complaints of some ruling or action of the trial court which the appellee alleges constituted error as to him. See *Jackson v. Ewton*, 411 S.W.2d 715, 717 (Tex.Sup.1967). This distinction should be observed to avoid confusion. See Rules 324 and 420, Texas Rules of Civil Procedure and commentary. In view of the liberal interpretation of the briefing rules required by Rule 420, we will consider appellee's "counterpoints" as we understand the arguments and authorities contained thereunder.

The appellants' trial petition sought recovery of delinquent taxes on the land and the improvements thereon described separately as follows: 1) (land) "Brooklyn Addition, Block B, an addition to the City of Corpus Christi, Nueces County, Texas, and 2) (improvements) "Brooklyn, Improvements Only, Block B, an addition to the City of Corpus Christi, Nueces County, Texas." The trial court entered a judgment awarding appellants delinquent taxes and granting foreclosure of the tax liens as to both "tracts." Appellee's "counterpoints" are limited to complaining of the trial court's action in granting a judgment for delinquent taxes and foreclosure on the improvements. Apparently appellee intends to attack the trial court's action as it relates to both the land and improvements described above because appellee's general arguments and authorities under these points refer to "property" and "real estate." "Real property," for the purposes of taxation, includes the "land itself" and "all buildings, structures and improvements, or other fixtures of whatsoever kind thereon . . . ." Tex.Rev.Civ.Stat.Ann. art. 7146 (1960).

Davis apparently complains that the judgment is void because the above descriptions are not sufficient to: 1) show his lawful indebtedness, and 2) support a judgment of foreclosure. As a general rule, the requirements for a description to be

considered sufficient to support a valid tax assessment are different from the requirements of the description to support a valid lien proceeding. See *Arnold v. Crockett Independent School District,* 404 S.W.2d 27 (Tex.Sup.1966); Vol. 21, Texas Practice, Property Taxes, §§ 223, p. 268; 249 pp. 338–341 (1975). A taxpayer may be estopped to question the description of the property in the assessments when the assessor adopts the same descriptions used by the taxpayer. If the inadequate description, together with the taxpayer's own knowledge, makes known to him the property that is being assessed, it is said that he is not misled. *Arnold v. Crockett Independent School District,* 404 S.W.2d 27, 28 (Tex. Sup.1966) and authorities cited therein. See also Charter of Corpus Christi, Art. VII, § 7.

█ Davis rendered his property in 1974 using the same description of which he now complains. In addition, the parties stipulated that, after he purchased the property, Davis' original 17.95 acre tract was replatted into Block A and Block B, Brooklyn Replat, which was recorded in Volume 23, Page 14, of the Map Records of Nueces County, Texas. Davis furnished a copy of this replat to the City taxing authorities. A certified copy of this replat clearly locating Block B was introduced into evidence. A copy of Davis' deed identifying the original 17.95 acres by a metes and bounds description was stipulated to by the parties and forms a part of the record. Davis also stipulated as to the authenticity of the survey he caused to be prepared in 1956 locating the improvements on Block B which survey is a part of the record. Davis testified that he owned these improvements on January 1 of each tax year in question. We hold that Davis cannot now complain that the tax assessments are invalid due to an insufficient description of the real estate. Davis' "counterpoint" No. 1 is overruled.

█ We next consider whether the property description is sufficient for foreclosure of the tax liens. Generally, if a judgment for foreclosure of a tax lien fails to describe a definite tract of land, the same is void. *Arnold v. Crockett Independent School District,* 404 S.W.2d 27, 29 (Tex. Sup.1966). The standard in such a case is whether or not "the judgment contains land descriptions that are so defective that the land cannot be located or identified." *Arnold v. Crockett Independent School Dist.,* 404 S.W.2d at 29.

█ The question to be determined here is whether or not "Brooklyn, Block B, an addition to the City of Corpus Christi" is definite enough to ascertain the location of the property in question. We think not.

As stated by our Supreme Court in *Greer v. Greer,* 144 Tex. 528, 191 S.W.2d 848, 849 (1946):

"The office of description in a deed, judgment or other writing is to furnish means of identification of land. . . . The rule was long ago announced by this court that in all instruments for the conveyance of lands the description must be so definite and certain upon the face of the instrument itself, or in some other writing referred to, that the land can be identified with reasonable certainty."

Here the judgment does not refer to another instrument. Block B of the Brooklyn subdivision cannot be located without resort to another writing or plat. We hold that the description is, therefore, too uncertain to support that portion of the trial court's judgment granting foreclosure.

In support of their argument that the description is sufficient, appellants rely heavily upon *David Graham Hall Foundation v. Highland Park Independent School Dist.,* 371 S.W.2d 762 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.). There, the court held that property described as "Lot 16 of Block 87 4th Installment of Highland Park with improvements thereon" to be a "proper description for tax purposes." This authority is not persuasive because it fails to mention whether the suit was for foreclosure of the tax lien or merely one for a personal judgment for the delinquent taxes. Appellee's "counterpoint 2 is sustained."

In this case, as in *Arnold v. Crockett Independent School District,* 404 S.W.2d 27,

28–29 (Tex.Sup.1966), the concern is not with the validity of the property description to support the tax assessment. We are concerned with the issue of whether the judgment of foreclosure is void because it does not describe the properties upon which the tax liens are ordered foreclosed. Therefore, that part of the judgment which foreclosed the tax liens on the land described as "Brooklyn Addition, Block B, an addition to the City of Corpus Christi, Nueces County, Texas" and "Brooklyn, Improvements Only, Block B, an addition to the City of Corpus Christi, Nueces County, Texas" is severed from that part of the judgment which is hereinafter affirmed and that part hereinafter reversed and rendered; and said judgment of foreclosure is reversed and the cause is remanded to the trial court with instructions that the court receive proof of the property where the tax liens are located and to enter judgment describing the property with such certainty that it can be located and identified. See *Arnold v. Crockett Independent School District*, 404 S.W.2d 27, 29 (Tex.Sup.1966).

That portion of the trial court's judgment awarding appellants taxes, penalties and interest calculated on an assessed value of $150,550.00 for Block B for the tax year of 1973 is reversed and judgment is here rendered that such taxes, penalties and interest be calculated on an assessed value of $210,155.00.

That portion of the trial court's judgment awarding appellants taxes, penalties and interest on Block B for the tax years of 1974, 1975 and 1976 is affirmed.

The remainder of the trial court's judgment awarding taxes, penalties and interest on the improvements only of Block B is affirmed.

The costs of this appeal are assessed 75% to appellants, City of Corpus Christi, Corpus Christi Independent School District, and Corpus Christi Junior College District, and 25% to appellee, Jack Davis.

The judgment of the trial court is RE-VERSED AND RENDERED IN PART, AFFIRMED IN PART, AND REVERSED AND CAUSE REMANDED WITH IN-STRUCTIONS IN PART.

## OPINION ON MOTION FOR REHEARING

The appellants have brought forth several points of err in their motion for rehearing. In point of error one, the appellants complain that our judgment improperly adjudged 75% of the costs of the appeal against the City of Corpus Christi and the school districts. The appellants request that we grant their motion for rehearing and tax all costs incurred in this Court to appellee Davis. Appellants' contention must be sustained in part.

■ The City of Corpus Christi, Corpus Christi Independent School District, and Corpus Christi Junior College District are exempt from payment from any court costs in suits to recover taxes. *City of Nacogdoches Independent School Dist. v. McKinney*, 513 S.W.2d 5 (Tex.Sup.1974); *City of Waco v. Owens*, 442 S.W.2d 324 (Tex.Sup.1969); *Electra Independent School District v. W. T. Waggoner Estate*, 140 Tex. 483, 168 S.W.2d 645 (1943). We do not agree, however, that all of such costs incurred in the appeal should be taxed against appellee Davis. In *Nacogdoches Independent School Dist. v. McKinney*, 513 S.W.2d 5 (Tex.Sup. 1974), our Supreme Court noted that prior opinions had been inconsistent in the manner in which costs should be taxed as to the winning taxpayer. In that case, it was determined that the winning taxpayer should be required to pay only those costs of the appeal incurred by him on the basis that the result followed more nearly the spirit of Rule 127, Texas Rules of Civil Procedure, which provides as follows:

"Each party to a suit shall be liable for all costs incurred by him. If the costs cannot be collected from the party against whom they have been adjudged, execution may issue against any party in such suit for the amount of costs incurred by such party, but no more."

In this case, appellee Davis did not win his entire case on appeal and he was assessed 25% of the costs of appeal. Davis

does not complain of this assessment. Since this Court still has jurisdiction of the cause, it may, and does here now, correct its judgment as to court costs as follows:

 Only those court costs incurred by the defendant, Jack Davis, in this Court (25%) are adjudged against him. No costs are adjudged against the plaintiffs, City of Corpus Christi, Corpus Christi Independent School District, and Corpus Christi Junior College District.

The appellants' remaining major contentions are presented in points of error two through four which complain of our holding that the property description contained in the trial court's judgment were not sufficient to support a judgment of foreclosure. Appellants' specific complaints under these points of error are that: 1) Davis waived his right to complain of the inadequacy of the property description; 2) the property description is sufficient to support a judgment of foreclosure; and 3) even if the description is not sufficient, this Court should have reformed the trial court's judgment by supplying the missing description elements.

 Appellants vigorously contend that Davis waived his right to complain of the sufficiency of the property description in the trial court. The only time during the trial process that this particular complaint was brought to the attention of the trial judge was in Davis' motion for judgment wherein he stated, in part, as follows:

"Judgment should be entered declaring the assessment of account number 1180–30–30 to be void, as a matter of law, due to the insufficient description."

It should be noted that he complained only of the sufficiency of the property description as it related to the validity of the tax assessments and not as to the validity of the judgment of foreclosure. We considered both complaints on the merits, however, and affirmed the validity of the tax assessments, but reversed and remanded as to the validity of the judgment of foreclosure. Our Supreme Court has stated that as a general rule, a judgment for foreclosure of a tax lien upon real estate which, though aided by the judgment rule, fails to describe a definite tract of land is *void*. *Arnold v. Crockett Independent School Dist.*, 404 S.W.2d 27, 28 (Tex.Sup.1966). (Emphasis added). Davis has not waived his right to complain of a judgment of foreclosure that is void due to an inadequate description. These points of error are overruled.

Other points of error raised in the motion for rehearing have been considered, and they are overruled. Appellants' motion for rehearing is granted in part and overruled in part.